W. M. WALTERSCHEID *et al.* v. JAMES A. CRUPPER.

No. 15,857.   (100 Pac. 623.)

SYLLABUS BY THE COURT.

DAMAGES—*Excessive—Trespass—Landlord and Tenant.* In an action by a tenant against the owner of a dwelling-house to recover damages for removing a portion of the roof of the house for the purpose of rendering it uninhabitable and compelling the tenant to vacate, causing injury to the plaintiff, a verdict for $800 will not be set aside as excessive.

Error from Sedgwick district court; THOMAS C. WILSON, judge. Opinion filed March 6, 1909. Affirmed.

*J. A. Brubacher,* and *James Conly,* for plaintiffs in error.

*John W. Adams,* and *George W. Adams,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: James A. Crupper sued W. M. Walter-scheid and Charles Walterscheid for damages, alleging in his petition that for several years he was in the peaceable possession of a dwelling-house in a suburb of Wichita occupied by himself and wife; that he was past seventy-four years of age; that on August 22, 1900, at a time when his wife was confined to her bed with sickness, the defendants and their agents forcibly entered upon the premises and wilfully and maliciously removed about one-half of the roof of the house and left it in that condition; that plaintiff attempted to repair the roof, but was unable to do so; that his circumstances were such that it was impossible for him to secure another shelter; and that on the same night a heavy rain fell, in consequence of which the plaintiff's health was injured by exposure to the weather. The answer was a general denial. Plaintiff recovered a judgment for $800, which the defendants seek by these proceedings to reverse.

On the trial the defendants denied that they ordered the roof removed or were present when it was done, and offered evidence to show that the work was ordered by J. V. Daugherty, from whom the property had been purchased and who had agreed to give possession. The evidence of the plaintiff showed that the roof was taken off about four o'clock in the afternoon, that the chimney was taken down and the pump removed the next day, and that the defendants were there both days. Plaintiff testified:

"Walterscheid was there when I came back. Both of them were there. They were both together. I asked what they meant by tearing the roof off. They said they were going to tear the house down. I said they could not do it. I did not have the means to move on and my wife was ill in bed, crying at the time. They were standing by the bed where they could see her.

"They said they would tear the house down unless

they could get me out.  They would have my house if they had to tear the house down to get me out.  .  .  . I got wet the night after the roof was taken off of the house.  The rain commenced long after the middle of the night.  It was the heaviest rain I have seen in Wichita.  I think it rained until nearly daylight.  I took the table-cloth and tacked one side to keep the rain off of my wife's head.  I was unable to keep myself from getting wet.  I had to stand there and take it.  I was wet to the skin.  I do not think there was a dry thing in the house.  There was no other place I could go that night to keep from getting wet."

One of the workmen who removed the roof testified that he objected to doing the work because there was a family in the house and it looked like it was going to rain; that one of the defendants told him that if he would not take the roof off while there was a sick woman in the house there were plenty who would.

The plaintiff testified that no notice had been served on him by any one to deliver possession of the premises.

Every contention of error, save one with respect to the statute of limitations, is based upon the theory that the special findings and the general verdict are contrary to the evidence.  There is abundant evidence to support the findings as well as the general verdict, and the contention that the defendants were in the peaceable possession of the premises when the acts complained of were committed, and were therefore not guilty of a trespass, can not be sustained.  The findings of the jury are that defendants employed workmen to remove the roof and aided and abetted them in doing it.  All the circumstances indicate that the defendants acted wilfully and wantonly, for the purpose of rendering the house uninhabitable, so that plaintiff and his family would be compelled to vacate the premises.  The defendants were liable for all damages occasioned by their unlawful acts.  (*Wilson v. Campbell,* 75 Kan. 159, 88 Pac. 548, 8 L. R. A., n. s., 426, 121 Am. St. Rep. 366, *Whitney v. Brown,* 75 Kan. 678, 90 Pac. 277, 11 L. R. A., n. s., 468.)  The case was a proper one for the al-

lowance of exemplary damages. (*Malone v. Murphy,* 2 Kan. 250; *Albert Wiley v. Keokuk,* 6 Kan. 94.) This is a case where the defendants seem to have taken the law into their own hands, in utter disregard of the plaintiff's rights, and the facts and circumstances, in our opinion, make the language used by the supreme court of Illinois in a similar case peculiarly applicable:

"The whole conduct of the parties was an outrage upon individual rights and upon the law, and all the circumstances indicate wantonness and malice. In such a case exemplary damages were properly awarded, and no court should weigh the testimony nicely for the purpose of reducing the amount." (*Jasper et al. v. Purnell,* 67 Ill. 358, 360.)

(To the same effect is *Street R. R. Co. v. Morrison, etc. Co.,* 160 Ill. 288, 43 N. E. 393.)

The jury were not asked to state separately the amounts allowed for actual and exemplary damages.

The defense of the statute of limitations, so far as the record shows, was not suggested in the court below, and is raised here for the first time. But apart from this, the plea in bar filed before the answer sets forth the pendency of the former action in terms which, we think, must be taken as an admission of the truth of the statement in the petition that the first action, commenced within time, was dismissed without prejudice and the present action brought within less than a year thereafter.

We find no error in the rulings of the court, and the judgment is affirmed.