ALDENS, INC., Appellant,

v.

Patrick C. RYAN, Administrator of Consumer Affairs for the State of Oklahoma, Appellee.

No. 76–1731.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 14, 1977.

Decided Feb. 27, 1978.

Rehearing Denied Feb. 13, 1978.

Jap W. Blankenship of Fellers, Snider, Blankenship & Bailey, Oklahoma City, Okl. (James D. Fellers, Oklahoma City, Okl., and Raymond N. Friedlander, Chicago, Ill., of counsel, with him on the brief), for appellant.

Larry C. Brawner, Gen. Counsel, Oklahoma Dept. of Consumer Affairs, Oklahoma City, Okl., for appellee.

Randolph R. Mahan, Asst. Atty. Gen., and Kathleen G. Smith, Staff Atty., Columbia, S. C., on the brief for amicus curiae, Irvin D. Parker, Administrator for the S. C. Dept. of Consumer Affairs, Columbia, S. C.

Before SETH, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

SETH, Chief Judge.

This is a challenge to the Oklahoma Consumer Credit Code, 14A Okl.Stats. §§ 1–201(5)(a) and 1–201A, as it applies the maximum interest rates to credit sales, and which does not permit actions in Oklahoma to collect balances where the interest rates exceed the Code maximum. It is brought by a mail-order house doing business in Illinois.

The plaintiff sought a declaratory judgment that the application of the Code provisions to its mail-order business was contrary to the Commerce Clause and Due Process Clause. The defendant Ryan as Administrator of Consumer Affairs for Oklahoma counterclaimed for damages on behalf of Oklahoma residents asserted to have been charged interest rates above the Code maximum, and also sought an injunction to prevent the collection in the future of excess charges.

The trial court found the Act to be constitutional, and entered judgment for the defendant for damages and for injunctive relief. The case was heard on stipulated facts.

The credit transactions between Aldens and Oklahoma residents are within the

Oklahoma UCCC definition of consumer credit transactions. The number of such transactions and the dollar totals are substantial. Aldens solicits by mailing its catalogues and flyers to Oklahoma residents. Its place of business is in Illinois, and it has no agents in Oklahoma, no telephone listings there. Its advertising is done only by mail. Aldens is not required to collect and remit the Oklahoma use tax, and is not required to qualify to do business in Oklahoma. The material for credit purchases and applications for credit are also sent by mail only. The credit agreement recites that it is an Illinois contract, and all orders are accepted in Illinois. Applications for credit from Oklahoma residents for the most part are checked with national credit agencies and a few are checked directly with Oklahoma sources by Aldens.

The finance or credit charges made by Aldens conform with the Illinois statutes and the transactions are also in conformance with Regulation Z. However, the interest rates as computed by Aldens exceed the maximum provided in the Oklahoma Code.

As to past due accounts Aldens attempts to make collection by mail, by phone, and ultimately turns them to a collection agency. The stipulation of facts shows that if Aldens were required to comply with the Oklahoma Code, its reduction in finance charges, and the special processing costs directed to Oklahoma separately would amount to some $160,500.00 per year. Gross sales in Oklahoma amount to some $2,250,000.00, of which eighty-one percent is on credit. There are about 13,800 credit customers in Oklahoma.

The mail-order transactions here concerned come within the provisions of the Oklahoma Code, as above mentioned. The Code is worded expressly to include mail-order solicitations, sales, and the extension of credit.

The same issues and contentions of the parties have been considered by the Third Circuit in *Aldens, Inc. v. Packel*, 524 F.2d 38 (3d Cir.), and by the Seventh Circuit in *Aldens, Inc. v. LaFollette*, 552 F.2d 745 (7th Cir.), and we reach the same conclusion as did those two courts.

An extended discussion in this opinion is not called for. It is sufficient to point out that the subject matter and purpose of the state regulation is the present day starting place for a consideration of the issues before us; thus the degree of interest of the state in the subject matter regulated, and how fundamental is this local interest. Against this is set the determination as to whether or not the consequential burden on commerce is clearly excessive. This is basically the teaching of *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, which, of course, concerned the regulation by a state of a mail-order insurance business. The Court there "rejected the contention" that the doctrines of place of contracting and place of performance should govern, and held that they must give way to the "degree of interest" the state had in the transaction of subject, and give way to the consequences of the contracts in the regulating states. *See also Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777. It is clear from times prior to *International Shoe* that the state can regulate the consequences of commercial transactions on its citizens which arise or are directed from outside its borders. The recent decisions on the point have discarded, for these purposes, the established doctrines of reliance on place of sale, place of delivery, the "presence" concept, place of contract, and place of performance which may be well recognized for other purposes.

■ It is apparent here, as the court said in *Aldens, Inc. v. Packel*, 524 F.2d 38 (3d Cir.), that the state's interest in the cost of credit extended for goods sold to its residents is sufficient to overcome due process objections. The degree of interest by the State of Oklahoma in this subject is clearly sufficient to support the Oklahoma Code against the due process attack. Physical presence of Aldens in Oklahoma is not required to subject its credit rates to state regulation in transactions with Oklahoma residents.

The "per se" approach of Aldens to the Commerce Clause must be rejected for the grounds above referred to. The states can, of course, pass Acts which affect commerce unless the burden so imposed greatly exceeds the extent of the local benefits. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326; *Great Atlantic & Pacific Tea Co., Inc. v. Cottrell*, 424 U.S. 366, 96 S.Ct. 923, 47 L.Ed.2d 55; *Head v. New Mexico Board*, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983.

Thus is this burden an unreasonable one in interstate commerce? Again we refer to the Court of Appeals decisions of the Third and Seventh Circuits, and again we reach the same conclusion. There is a burden on Aldens to sort out the Oklahoma credit transactions, and accord them somewhat different treatment. There are apparently regular mailings to some 34,000 Oklahoma residents; these are followed by additional flyers and, if required, credit applications and charge account agreements. The dollar figure of total sales in Oklahoma is in the record as is an estimated cost of special treatment for Oklahoma residents. We agree with the trial court that on balance, a conformance with the Oklahoma cost of credit rules would not constitute an undue burden on interstate commerce. In the era of computers, the record shows that a sorting of this nature, with separate Oklahoma contracts, would not be such an unreasonable burden as compared to the local interest in the subject.

AFFIRMED.