**Robin Lea WAGONER,
Plaintiff–Respondent,**

v.

**Marshall W. BENNETT,
Defendant–Petitioner.**

No. 76081.

Supreme Court of Oklahoma.

July 9, 1991.

---

Jesse L. Sumner, Laughlin, Sumner and Associates, Bartlesville, for plaintiff-respondent.

Jerry M. Maddux, Selby, Connor, Maddux & Janer, Bartlesville, for defendant-petitioner.

SUMMERS, Justice:

Plaintiff sued her residential landlord for actual and punitive damages, claiming (1) that she was wrongfully evicted, and (2) that he took, lost, and damaged her personal property. Defendant moved to strike the plaintiff's claim for punitive damages, arguing that statutory remedies were exclusive. The trial court declined to strike the prayer, but certified the issue for interlocutory review under 12 O.S.1981 § 952(b)(3). The proceedings have been stayed pending our decision.

We have granted certiorari and conclude that the issue as certified and briefed fairly consists of three questions: First, may a residential tenant in an action for wrongful eviction recover punitive damages in addition to the damages allowed by statute? Second, in the event she cannot, may she elect, at her option, whether to sue under the Oklahoma Residential Landlord and Tenant Act or at common law? Third, may she pursue a common law cause of action for conversion of, or damage to, her personal property in addition to the statutory claim for wrongful eviction? We answer the first two questions in the negative, and the third in the positive.

## I. WRONGFUL EVICTION

Plaintiff Wagoner brought suit in August, 1989, for damages claimed due for additional rent and utilities, emotional and mental duress,[1] plus punitive damages for

---

1. The issue of whether emotional and mental duress lies properly within the "actual damages" recoverable under the Landlord and Tenant Act has not been tendered in the certifying Order and is not reached in this opinion.

the defendant's wilful and unlawful acts. We have not before addressed the issue of whether punitive damages may be awarded for wrongful eviction along with double damages under the Oklahoma Residential Landlord and Tenant Act, 41 O.S.1981 § 101 et seq. Section 123 of that Act limits damage in wrongful eviction cases to "an amount not more than twice the average monthly rental, or twice [the] actual damages, whichever is greater." Defendant Bennett urges that recovery of both punitive and statutory double damages is prohibited under the general rule which disallows "double recovery" for a single inury. *John Mohr & Sons, Inc. v. Jahnke*, 55 Wis.2d 402, 198 N.W.2d 363, 368 (1972); *see generally Annot.*, 40 A.L.R.4th 11, 51–55 (1985).

■ To resolve this question, we focus on the question of whether the double damages allowed under Section 123 are penal (or punitive) in nature. Punitive damages are those damages which are given because of the wanton, reckless, malicious, or oppressive character of the acts of the defendant. *Hamilton v. Amwar Petroleum Co., Inc.*, 769 P.2d 146, 149 (Okla.1989); *Slocum v. Phillips Petroleum Co.*, 678 P.2d 716, 719 (Okla.1983); *In re Smith*, 211 Kan. 397, 507 P.2d 189, 193 (1973). They are meant to punish the wrongdoers and to act as a deterrent to others. *Hamilton*, 769 P.2d at 149.

> Such damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive or a willful and wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs. (Citations omitted) *Smith*, 507 P.2d at 194.

We note that several other jurisdictions have addressed similar questions regarding double recovery. For example, a Pennsylvania Court held that punitive damages could not be awarded because the statutes governing the landlord and tenant relationship provided for double damages. *His World, Inc. v. Cleto M., Inc.*, 250 Pa.Super. 293, 378 A.2d 943 (1977). There, the landlord entered into the leased premises and sold the personal property even though the rent was not in arrears. The landlord claimed that the premises had been abandoned. The tenants disagreed, stating that they intended to remodel the leased space, and to continue to pay rent. The court held that there was no basis for allowing the recovery of both punitive damages and statutory double damages because the statutory damages were punitive in nature.

The Arkansas Supreme Court addressed a similar question in *Stoner v. Houston*, 265 Ark. 928, 582 S.W.2d 28 (1979). The plaintiff brought suit under a statute governing timber damage, seeking both actual and punitive damages. The statute allowed for treble damages. The jury awarded actual and punitive damages. The trial court then tripled the actual damages, relying on the language of the statute. On appeal, the Arkansas Supreme Court noted that the treble damages were punitive in nature, and refused to award both, finding that this would allow for a double punitive recovery. *Id.* 582 S.W.2d at 30–31; *see also Bill Terry's, Inc. v. Atlantic Motor Sales*, 409 So.2d 507 (Fla. App.1982). The court determined, however, that the plaintiffs could elect the remedy they wanted to pursue.

In *John Mohr & Sons, Inc. v. Jahnke*, 55 Wis.2d 402, 198 N.W.2d 363 (1972), the Wisconsin Supreme Court considered a "restraint of trade" statute which provided for treble damages. The court found that a person could not recover damages both under the statute and at common law because "when a statute creates a cause of action and provides the remedy, the remedy is exclusive." *Id.* 198 N.W.2d at 368. As such, allowing punitive damages in addition to the treble damages provided by statute was held inconsistent as allowing double recovery for a single injury. Only those damages provided by the statute, it being punitive in nature, would be allowed. *Id.* at 369.

Following the reasoning of *Mohr*, the Iowa Supreme Court agreed that both punitive damages and treble damages under a trespass statute were not recoverable.

*Johnson v. Tyler*, 277 N.W.2d 617, 619 (Iowa 1979). The court stated that by bringing the suit under the statute the plaintiff had elected to pursue statutory damages, and that those damages were themselves punitive in nature. *Id.* at 618.

In *Eastern Star, Inc. v. Union Bldg. Materials*, 6 Haw.App. 125, 712 P.2d 1148 (1985), the plaintiff prayed for punitive damages as well as treble damages under a "deceptive trade practices" statute. The appellate court followed the *Mohr* decision, reasoning that an award of both treble damages and punitive damages for the same act constituted improper double recovery. *Id.* 712 P.2d at 1159. It held that the proper amount of recovery is either treble damages or punitive damages, whichever is the greatest.

Wagoner cites *Ramirez v. Baran*, 730 P.2d 515 (Okla.1986) for the proposition that both types of damages are recoverable. In *Ramirez*, the plaintiffs leased from the defendant a commercial building in which they operated a restaurant. Following negotiations on a new lease, defendant instructed that the lease had to be returned to her by 5:00 p.m. Plaintiffs attempted to return the signed lease but could not find the defendant. The following morning defendant locked the plaintiffs out of the building and they were not allowed to re-enter for over three weeks. Plaintiffs brought an action for wrongful eviction and conversion, asking for punitive damages. We held that punitive damages were properly allowed.

We find *Ramirez* to be inapplicable to our present case. *Ramirez* involved commercial property rather than residential property, and thus did not fall under the ORLTA. Unlike our situation wherein the statutory scheme explicitly controls and limits the rights of a residential tenant with regard to wrongful eviction, the general statutes governing rentals are not as restrictive as to commercial property. *See* 41 O.S.1981 §§ 1–40.

Following the reasoning of our sister jurisdictions, the remedy provided in 41 O.S. 1981 § 123 is limited by its own language to "not more than twice the average monthly rental, or twice his actual damages, whichever is greater." The statute compensates the tenant for any actual damages, and then allows that figure to be doubled. We see no other interpretation but that the legislature intended the landlord to face a monetary penalty for wrongful eviction. This holding is consistent with *Crow v. Davidson*, 186 Okl. 84, 96 P.2d 70, 72 (1936), wherein we agreed that an ejectment statute which provided for treble damages was penal in nature. We hold that Section 123 is likewise penal in nature. Thus, both punitive damages and double statutory damages are not recoverable by a residential tenant for the same wrongful eviction.

## II. ELECTION OF REMEDIES

■ In light of this resolution, the next question to be answered (and one we believe to be fairly comprised within the issue tendered) is whether the tenant may elect to pursue the common law action of wrongful eviction instead of the statutory cause of action. Plaintiff points out she did not frame her pleadings under the statutory double damage provision, electing instead to pursue her remedy at common law. An election between the two causes of action by the tenant would be permissible if the statutory cause of action did not supplant the common law action. *See Bowles v. Neely*, 28 Okl. 556, 115 P. 344 (1911); *Edwards v. Travelers Ins.*, 563 F.2d 105, 119–120 (6th Cir.1977). To determine the sweep of the statute, we turn to Section 103 of the Oklahoma Residential Landlord and Tenant Act:

> Except as otherwise provided in this act, this act applies to, regulates, and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state.

The Act specifies the rights and limits the remedies of a tenant of residential property. It was enacted to codify the changes which have evolved in the area of residential landlord and tenant law. Downing, *Oklahoma Residential Landlord and Tenant Act: A Brief Outline*, 50 O.B.J.

412 (1979). With this enactment the legislature sought to "provide specific guidelines for the regulation of residential rental property." Downing, *The Oklahoma Residential Landlord and Tenant Act—The Continuing Experience,* 17 Tulsa L.J. 97, 102 (1981).

In *Staples v. Baty,* 206 Okl. 288, 242 P.2d 705 (1952), this court addressed the exclusivity of a tenant's cause of action and remedy under 41 O.S.1941 § 31, now 41 O.S.1981 § 118, of the ORLTA. We affirmed prior rulings dating back to 1926, wherein the remedies provided by statute to the tenant were held to be exclusive, and held that "the tenant has no right of action in tort. . . ." *Staples,* 242 P.2d at 706. We had earlier said that "where a statute creates a right and prescribes a remedy for its violation, the remedy thus prescribed is exclusive." *Ewing v. Cadwell,* 121 Okl. 115, 247 P. 665, 666 (1926).

We believe the same holds true under section 123. Section 123 fixes the remedy for one's wrongful removal or exclusion from a dwelling unit. Considering the legislature's apparent intent in enacting the ORLTA together with prior case law, we find that the tenant's cause of action is regulated and determined by the statute, as is the remedy. Section 123 supplants the common law cause of action for wrongful eviction. A choice between the statutory cause of action and the common law cause of action is not available to the residential tenant.

■ Although the issue was not raised by the parties, the dissent urges that any differentiation between commercial tenants and residential tenants is violative of the "constitutional policy that favors uniformity of treatment for the same class." Thus the dissent would hold that because commercial tenants have a common law remedy of punitive damages, residential tenants must be given the same remedy.

We disagree. Article 5, Section 59 of the Oklahoma Constitution requires that all persons or things in a designated class be treated equally under the law. *Mistletoe Express Serv. v. United Parcel Serv. Inc.,* 674 P.2d 1, 10 (Okla.1983). However, it

*"allows* the legislature to pass special laws *when a general law is not applicable."* *Reynolds v. Porter,* 760 P.2d 816, 822 (Okla.1988). "A classification is not infirm if the special class has some reasonable distinction from other subjects of a like general character, which distinction bears some reasonable relation to the legitimate objectives and purposes of the legislation." *Black v. Ball Janitorial Serv. Inc.,* 730 P.2d 510, 514 (Okla.1986).

Here, the differentiation between commercial and residential tenants is necessary to afford the residential tenant protections which are not particularly needed by commercial tenants. *See* Backman, *The Tenant as a Consumer? A Comparison of Developments in Consumer Law and In Landlord/Tenant Law,* 33 O.L.R. 1, 3–4 (1980). Rather than forcing a residential tenant to litigate in the traditional and lengthy manner, the ORLTA provides specific relief to expedite the resolution of such disputes to avoid disruptions resulting from eviction from one's home. It encourages the residential tenant to file a claim by providing a speedy remedy and the incentive of double damages, even in the absence of provable malicious or oppressive behavior by the landlord.

In several situations the legislature has seen fit to treat the arena of commerce differently from that of the non-commercial consumer. For example, the Uniform Consumer Credit Code applies to consumer credit sales, *see* 14A O.S.1981 § 2–102, but specifically exempts those credit transactions made to business or governmental borrowers. *See* 14A O.S.1981 § 1–202. This legislation has withstood constitutional attack under the Due Process and Commerce Clauses of the Federal Constitution. *Aldens Inc. v. Ryan,* 571 F.2d 1159 (10th Cir.1978). The Uniform Commercial Code likewise treats the non-commercial customer differently from the commercial customer. *See* 12A O.S.1981 §§ 2–102, 2–104(1).

We believe the ORLTA bears a reasonable relation to legitimate legislative objectives in providing rights and remedies to residential landlords and tenants. We do

not agree that the ORLTA violates Art. 5, § 59.

## III. CONVERSION OR INJURY TO PROPERTY

■ The final issue to be addressed is whether Wagoner may assert a common law cause of action for conversion or injury to personal property in addition to her wrongful eviction claim under the ORLTA. In her petition, Wagoner alleges that Bennett wrongfully took, lost, and damaged certain of her personal possessions. We have already determined that the common law cause of action for wrongful eviction was supplanted by the ORLTA; however, this does not exclude the possibility of a traditional cause of action for conversion and/or injury to personal property.

The ORLTA provides a claim when the "landlord wrongfully removes or excludes a tenant from the possession of a dwelling unit." [2] It continues by providing that the tenant may recover possession of the dwelling, or terminate the lease, and in either event, recover damages.[3] The Act in effect at the time of the eviction also provided for the sale or disposal of personal property abandoned or surrendered by the tenant. *See* 41 O.S.1988 § 130(A). But nowhere did the 1988 version mention a cause of action for the wrongful removal or destruction of personal property if the tenant was evicted.[4]

At common law, conversion was "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with [the individual's] rights there-

in." *Steenbergen v. First Fed. Sav. & Loan,* 753 P.2d 1330, 1332 (Okla.1987). This cause of action focuses on the personal property of an individual. The Act focuses on the wrongful removal or exclusion from a residential dwelling. We do not believe that this 1988 Act supplants that common law action of conversion. Thus, the version of the ORLTA in effect at the time of the eviction does not prevent Wagoner from bringing an action for conversion of personal property.

■ Punitive damages are permissible in a common law conversion action. *See Shipman v. Craig Ayers Chevrolet, Inc.,* 541 P.2d 876, 880–81 (Okla.App.1975). Because the statutory action for wrongful eviction and the common law action for conversion involve different elements, we find no reason that punitive damages should not be allowed for the latter. This does not violate the general rule against double recovery. Two different wrongs are being asserted and each involves different damages. An award of punitive damages conversion is not governed by the statutory limits set for a wrongful eviction action. Wagoner is not prohibited from asking for punitive damages with regard to the conversion action.

The trial court's order leaving undisturbed the plaintiff's prayer for punitive damages is thus reversed in part and affirmed in part. The stay is lifted and this matter is remanded to the trial court for further proceedings consistent with these views.

2. 41 O.S.1981 § 123.

3. 41 O.S.1981 § 124.

4. The ORLTA, in 1990, was amended to provide a remedy for the tenant who is lawfully evicted. Section 130 now provides:

**130. Abandoning, surrendering or eviction from possession of dwelling unit—Disposition of personal property**
A. If the tenant abandons or surrenders possession of the dwelling unit *or has been lawfully removed from the premises through eviction proceedings* and leaves household goods, furnishings, fixtures, or any other personal property in the dwelling unit, the landlord

may take possession of the property, and if, in the judgment of the landlord, the property has no ascertainable or apparent value, the landlord may dispose of the property without any duty of accounting or any liability to any party. (emphasis added)

. . . . .

H. The landlord may not be held to respond in damages in an action by a tenant claiming loss by reason of the landlord's election to destroy, sell or otherwise dispose of the property in compliance with the provisions of this section. If, however, the landlord deliberately or negligently violated the provisions of this section, the landlord shall be liable for actual damages.

HODGES, V.C.J., and LAVENDER, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

OPALA, C.J., concurs in result in Parts I and III, dissents from Part II.

ALMA WILSON and KAUGER, JJ., concur in part; dissent in part.

OPALA, Chief Justice, with whom ALMA WILSON and KAUGER, Justices, join, concurring in result in Parts I and III and dissenting from Part II.

In Part I of its opinion the court holds that the double-damages provision for wrongful eviction in § 123[1] of the Oklahoma Residential Landlord and Tenant Act (41 O.S.1981 § 101 et seq.) (Act) bars a tenant's recovery of both punitive damages and twice his (or her) actual damages "for the same wrongful eviction." I concur in this view. The inclusion of punitive damages in that Act's modified common-law breach-of-contract remedy would violate the interdiction of 23 O.S.Supp.1986 § 9.[2] In Part II the court construes § 123 as creating the *exclusive* remedy for wrongful eviction claims, *ex contractu* and *ex delicto* as well, thus barring common-law tort recovery of actual *cum* punitive damages and leaving aggrieved residential tenants with no alternative but to seek double the amount of actual damages prescribed by the statutory measure. I must recede from this pronouncement because (a) in the absence of explicit language manifesting legislative intent to abrogate the common law's measure of damages for tort actions, the statutory and *ex delicto* common-law forms of redress for this tenant must be considered *cumulative*, though *mutually* exclusive, thus leaving her free to choose between them and (b) without either a legislative warrant or any reasonable basis the court dichotomizes today the common-law *tort* of wrongful eviction by withdrawing from residential tenants, but not from commercial-property lessees, the benefit of an *ex delicto* claim.

In Part III of its opinion the court allows the tenant to press for relief based on common-law conversion and on trespass (injury) to personal property. Although I concur in this conclusion, I recede from the court's analysis of the Act's purview. The 1988 version of § 130(A),[3] which was in effect at the time of this eviction, introduced a comprehensive scheme for a landlord's disposition of "household goods, furnishings, fixtures, or any other personal property" which a tenant leaves behind when the dwelling unit is *abandoned or surrendered.* Section 130(A) has since been expanded to include also property left by a tenant who has been "lawfully removed" *via* an *eviction* proceeding.[4] If a

1. The terms of 41 O.S.1981 § 123 provide:
   "*If a landlord wrongfully removes or excludes a tenant* from possession of a dwelling unit, the *tenant may recover possession* by a proceeding brought in a court of competent jurisdiction, *or terminate the rental agreement* after giving notice of such intention to the landlord, and *in either case recover an amount not more than twice the average monthly rental, or twice his actual damages*, whichever is greater. If the rental agreement is terminated, the landlord shall return all deposits recoverable under Section 15 of this act and all prepaid and unearned rent." (Emphasis added.)

2. *Punitive damages are not recoverable in contract actions.* The terms of 23 O.S.Supp.1986 § 9 provide in pertinent part:
   "A. In any action for the breach of an obligation *not arising out of contract*, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another ... the jury ... may give damages

for the sake of example...." (Emphasis added.)

3. See 41 O.S.Supp.1988 § 130(A), whose terms provide:
   "A. *If the tenant abandons or surrenders possession of the dwelling unit and leaves household goods, furnishings, fixtures, or any other personal property in the dwelling unit,* the landlord may take possession of the property, and if, in the judgment of the landlord, the property has no ascertainable or apparent value, the landlord may dispose of the property without any duty of accounting or any liability to any party. In any such case, the landlord has the option of complying with the provisions of subsection B of this section [which requires that the tenant be given notice of the sale of personal property deemed to have value]." (Emphasis added.)

4. See 41 O.S.Supp.1990 § 130(A), whose pertinent terms provide:
   "A. If the tenant abandons or surrenders possession of the dwelling unit *or has been*

landlord "deliberately or negligently" violates any provision of that section, e.g., fails to give the tenant notice of a public sale of personal property not removed from the dwelling,[5] § 130(H) then (in its 1988 version) and now makes that landlord liable for *actual damages alone.*[6]

The court implicitly concludes today that had § 130(A)'s 1988 version encompassed property left by an *evicted* tenant, the statute would have supplanted this tenant's common-law tort claim, affording her only the actual damages recovery prescribed by § 130(H). In my view, *neither* version of the enactment—that of 1988 or that of 1990 vintage—manifests a legislative intent to abrogate the common law's tort remedies either for conversion of or trespass (injury) to personal property. For a more

detailed explanation of this view see Part I of my opinion. It is for this reason that I would allow this tenant to proceed for vindication of her property loss according to the norms of common-law tort regime.

## I.

### THE COMMON LAW MAY NOT BE ABROGATED BY IMPLICATION

At common law wrongful eviction is redressible *both in contract and in tort* as a *hybrid* cause of action,[7] much like, for example, the remedy for the bank's wrongful dishonor of a depositor's check. The legal injury which this action redresses is both a delict and a breach of contract, at the pleader's election.[8] A tenant who suffers

*lawfully removed from the premises through eviction proceedings and leaves household goods, furnishings, fixtures, or any other personal property in the dwelling unit, the landlord may take possession of the property, and if, in the judgment of the landlord, the property has no ascertainable or apparent value, the landlord may dispose of the property without any duty of accounting or any liability to any party. * * *"* (Emphasis added.)

5. See 41 O.S.Supp.1988 § 130(B), whose terms provide:
"B. If the tenant abandons or surrenders possession of the dwelling unit and leaves household goods, furnishings, fixtures, or any other personal property of an ascertainable or apparent value in the dwelling unit, *the landlord may take possession of the property and give notice to the tenant, demanding that the property be removed* within the dates set out in the notice but not less than fifteen (15) days after delivery or mailing of such notice, *and that if the property is not removed within the time specified in the notice, the landlord may sell the property at a public sale.* The landlord may dispose of perishable commodities in any manner the landlord considers fit. Payment by the tenant of all outstanding rent, damages, storage fees, court costs and attorneys' fees shall be a prerequisite to the return of the personal property. For purposes of this section, notice sent by certified mail to the tenant's last-known address with forwarding requested shall be deemed sufficient notice." (Emphasis added.)

6. The terms of 41 O.S.Supp.1988 § 130(H) provide:
"H. *The landlord may not be held to respond in damages in an action by a tenant claiming loss by reason of the landlord's election to destroy, sell or otherwise dispose of the property in compliance with the provisions of this

section. If, however, the landlord deliberately or negligently violated the provisions of this section,* the landlord *shall be liable for actual damages."* (Emphasis added.)

7. See *Castle v. Double Time, Inc.,* Okl., 737 P.2d 900, 902 (1986), where the court recognized the fundamental obligations connected with the landlord/tenant relationship as falling under *both* promise-related and status-based rubrics. Breaches of promise are enforceable *ex contractu* while breaches of status-based duties are redressible in a manner indistinguishable from an *ex delicto* invasion of property interest. The lease creates a contractual relation between lessor and lessee; its promise-based obligations are enforceable *ex contractu.* The demise (or grant) of the leasehold estate creates a *tenant status;* its breaches are redressible as if they were tortious. *Hinson v. Cameron,* Okl., 742 P.2d 549, 557 n. 32 (1987); *Enterprise Mgmt. Consul. v. Tax Com'n,* Okl., 768 P.2d 359, 362 (1989); Graveson, Status in the Common Law at 138–139 (Univ. of London, The Athlone Press 1953).

8. See *Shaw v. Union Bank and Trust Co.,* Okl., 640 P.2d 953, 955 (1981), where this court recognized that a claim for wrongful dishonor of a bank item is a *hybrid* cause of action—comprised of "more than a mere breach of contract" —in which punitive damages are recoverable. The banker/depositor relationship, like that of landlord and tenant (see *Castle v. Double Time, Inc., supra* note 7 at 902), embodies two distinct clusters of obligations—those created by an express or implied contract, which in turn creates a creditor/debtor bond, and those fixed by the law itself, which are attributes of *status-based* rights. *Shaw v. Union Bank and Trust Co., supra* at 957 (Opala, J., concurring in part and dissenting in part); see *Addis v. Gramophone*

mental anguish or physical injury proximately caused by the landlord's misconduct *may forego the breach-of-contract remedy and sue in tort.*[9] Exemplary damages are recoverable at common law for a landlord's wrongful eviction when malice or recklessness is proved.[10] Since this tenant seeks to recover punitive damages, the question here is what legal effect, if any, does § 123 of the Act have upon her common-law remedy for the landlord's *tortious* eviction. The court holds that the statute in question bars punitive damages recovery and hence abrogates her tort claim. I would hold that § 123 leaves the residential tenant's *ex delicto* remedy undisturbed.

*The common law remains in full force in this state, unless a statute explicitly provides to the contrary.*[11] *There can hence be no legislative abrogation of the common law by implication.*[12] In this action for wrongful eviction the tenant appears to invoke the traditional *common-law tort measure* for reparations—actual *cum* punitive damages. The terms of § 123, which in the court's view supplant the common-law tort remedy for wrongful eviction, permit a tenant to recover up to twice his actual damages when the landlord is found to have "wrongfully" removed the tenant or excluded him from the dwelling. In contrast to the common law's standards for recovery of punitive damages in an *ex delicto* action,[13] no showing of intent, wantonness or malice is required for a double-damages award under § 123.[14] That sec-

9. *Richardson v. Pridmore,* 97 Cal.App.2d 124, 217 P.2d 113, 117–118 (1 Dist.1950); *Harris v. Cleghorn,* 121 Ga. 314, 48 S.E. 959 (1904) (the court's syllabus ¶ 1).

10. *Ramirez v. Baran, infra* note 24 at 518; see also *Plotnik v. Rosenberg,* 55 Cal.App. 408, 203 P. 438, 439 (1 Dist.1921); *Johnson v. Howard,* 92 Ga.App. 96, 88 S.E.2d 217, 221 (1955); *Walterschied v. Crupper,* 79 Kan. 627, 100 P. 623, 624 (1909); *Cato v. Silling,* 137 W.Va. 694, 73 S.E.2d 731, 743 (W.Va.App.1952); *Besinger v. McLoughlin,* 257 Wis. 56, 42 N.W.2d 358, 360 (1950).

11. 12 O.S.1981 § 2. The pertinent terms of § 2 provide:
"*The common law,* as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, *shall remain in force in aid of the general statutes of Oklahoma;* but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object." (Emphasis added.)

12. *Reaves v. Reaves,* 15 Okl. 240, 82 P. 490, 495 (1905); *Roxana Petroleum Co. v. Cope,* 132 Okl. 152, 269 P. 1084, 1085 (1928) (the court's syllabus ¶ 3); *Ricks Exploration v. Okl. Water Resources Bd.,* Okl., 695 P.2d 498, 504 (1984); *Davis v. Davis,* Okl., 708 P.2d 1102, 1111 (1985); *State Mut. Life Assur. Co. of Amer. v. Hampton,* Okl., 696 P.2d 1027, 1036 (1985) (Opala, J., concurring). See also *Silver Falls Timber Co. v. Eastern & Western Lumber Co.,* 149 Or. 126, 40

Co., Ltd., House of Lords [1909] A.A. 488, 78 L.J.K.B. 1122, 101 L.T. 466, H.L. According to *Addis'* formulation of the English rule, punitive damages are recoverable "in actions against a banker for refusing to pay a customer's cheque when he has in his hands funds to meet it."

P.2d 703, 713 (1935), where the court noted that when a statute "carves out of the common law an offense, making it a statutory offense, *there is no implied repeal of the common law with respect to other offenses of the same general character.* " (Emphasis added.)

13. *In the absence of clear and convincing evidence of the defendant's recklessness, double damages is now the norm (or limit) for punitive damages.* 23 O.S.Supp.1986 § 9(A), *infra. Only if the trial judge finds clear and convincing evidence of the defendant's reckless conduct may* the trier's award *exceed this statutory limit.*

The pertinent terms of 23 O.S.Supp.1986 § 9(A) provide:
"A. In *any action* for the breach of an obligation not arising from contract, *where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury,* in addition to the actual damages, *may give damages for the sake of example, and by way of punishing the defendant, in an amount not exceeding the amount of actual damages awarded. Provided,* however, *if* at the conclusion of the evidence and prior to the submission of the case to the jury, *the court shall find,* on the record and out of the presence of the jury, *that there is clear and convincing evidence* that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, *then the jury may give damages for the sake of example,* and by way of punishing the defendant, *and the percentage limitation on such damages set forth in this section shall not apply.*" (Emphasis added.)

14. For the terms of 41 O.S.1981 § 123 see *supra* note 1.

tion makes no reference to the tenant's tort claim. Moreover, the Act, which *expressly limits its own scope to the "regulation and determination of rights, obligations and remedies under a rental agreement,"* [15] clearly addresses *only the contractual* aspect of the residential landlord/tenant relationship. *The common-law tort remedy for redress of a landlord's wrongful eviction is plainly dehors the purview of the Act. Nothing in it affords a textually demonstrable legislative design to abrogate a residential tenant's common-law tort claim for harm inflicted by a landlord's wrongful eviction.* [16] In sum, the tort of wrongful eviction is abrogated today for a class of residence renters in spite of an expressed legislative intent to confine the application of § 123 provisions to contract law.

## II.

### SECTION 123 WAS INTENDED TO MODIFY THE COMMON LAW'S QUANTUM OF ALLOWABLE *EX CONTRACTU* RECOVERY FOR WRONGFUL EVICTION *WITHOUT* AFFECTING THE RESIDENTIAL TENANT'S *TORT* REMEDY

The court mistakenly regards this case as governed by the rule that a statutory remedy is exclusive *when the statute appears to create both a new right and a new remedy.* Although double damages for wrongful eviction is a new measure of reparations created by § 123 [17] for *ex contractu* actions, *neither a new right nor a new duty was established by this section of the Act.* A statutory remedy is exclusive *only when an enactment imposes some new duty and fashions a new remedy for the enforcement of a new right whose breach becomes redressible solely by that remedy.* [18] *Section 123 does not craft a new right of action nor afford a new remedy.* At most, it establishes a *modified common-law ex contractu* redress with the recovery limit raised to twice the amount of the plaintiff's actual loss.

The intended beneficiary of § 123's "beefed up" contract claim clearly is the aggrieved residential tenant. When invoked, § 123 affords him/her an opportunity to secure double recovery *without* imposing on him the more burdensome probative requirement for a punitive damages award in a common-law *ex delicto* wrongful eviction case. *But now, as it was the case before the enactment of § 123, the afforded remedy continues to be grounded on a common-law contract theory of wrongful eviction.* A statutory elevation

15. See 41 O.S.1981 § 103, whose terms provide:
"A. Except as otherwise provided in this act, *this act applies to, regulates and determines rights, obligations and remedies under a rental agreement,* wherever made, for a dwelling unit located within this state.
"B. Any agreement, whether written or oral, shall be unenforceable insofar as said agreement, or any provision thereof, conflicts with any provision of this act." (Emphasis added.)

16. Instances in which the common-law system of remedies continues side by side with a statute that evinces *no* legislative intent to supplant it are not uncommon in Oklahoma jurisprudence. See, e.g., *State Mut. Life Assur. Co. of Amer. v. Hampton,* Okl., 696 P.2d 1027, 1032 (1985); *Hood v. Hagler,* Okl., 606 P.2d 548, 552–553 (1980); *In re Adoption of Graves,* Okl., 481 P.2d 136, 138 (1971).

In *Hampton,* the court held that Oklahoma's "slayer statute," 84 O.S.1981 § 231, "bars a beneficiary who has actually been convicted of the insured's murder or first-degree manslaughter from recovering under the insurance policy," (696 P.2d at 1032) but does not preclude application of the common-law rule which allows, in a civil action following an acquittal, the beneficiary's disqualification upon proof of the crime by a preponderance of the evidence. *Hood* holds that the "dog bite statute," 4 O.S.1981 § 42.1, does not prevent a judgment's reversal for trial court's failure also to instruct on common-law negligence. In *Adoption of Graves,* the court held that the provisions of 10 O.S.1961 § 60.10 of the Uniform Adoption Act did not abrogate the pre-existing, common-law right of natural parents to revoke their consent to an adoption for fraud practiced by the adoptive parents.

17. For the terms of 41 O.S.1981 § 123 see *supra* note 1.

18. *Ewing v. Cadwell,* 121 Okl. 115, 247 P. 665, 666 (1926); *Alfe v. New York Life Ins. Co.,* 180 Okl. 87, 67 P.2d 947 (1937) (the court's syllabus ¶ 1).

in the amount recoverable in contract fashions "a new element of damages as distinguished from [creating] a new remedy...." [19] Legislative increases in the common-law measure of damage are changes in substantive rights and not in the form of remedy.[20] *Moreover, the § 123 contract claim certainly cannot be held exclusive of the tenant's tort remedy just because its source happens to be statutory.*[21]

The change effected by § 123 is *not* in the essence of the remedy itself (which, as before, is by a breach-of-contract action) but *solely* in the limit of damages that may be recovered for breach of a residential rental agreement. Inasmuch as the Act is entirely silent with respect to the then-unabrogated common-law tort claim for wrongful eviction, § 123 should be construed as but an alternative though mutually exclusive form of redress. The tenant's right to pursue a tort claim is utterly unaffected by the Act's statutory modification of the common-law contract action.[22]

## III.
## THE COURT'S CONSTRUCTION OF § 123 ARBITRARILY CREATES A

## DICHOTOMY WHICH IS CONSTITUTIONALLY INFIRM

Legislative abrogation of the common law may not take place in the absence of explicit statutory language.[23] In holding today that § 123 repeals the *residential* tenant's common-law tort remedy for wrongful eviction, the court relies solely upon silence in the statutory text. Wrongfully evicted *commercial*-property tenants remain free to sue in tort.[24] *Withholding* the common law's *ex delicto* remedy from residential tenants creates a dichotomy that, in my view, was unintended by the legislature and would contravene Oklahoma's clear mandate in Art. 5 § 59, Okl. Const.,[25] for a general law's uniform application.

The legislature may, of course, treat residential tenants differently from commercial-property lessees *in the context of contract-law application.* The court correctly points out in its opinion that commercial law of obligations *generally* sanctions a different norm for "merchants" and "consumers." What the opinion overlooks is that the permissible contract-law dichotomy for tenancy distinctions is an utter stranger to the common-law tort regime.[26] Here,

19. *Thomas v. Cumberland Operating Co.*, Okl., 569 P.2d 974, 976 (1977).

20. *Thomas v. Cumberland Operating Co., supra* note 19 at 976.

21. One case in which a statute was held to have provided an exclusive remedy is *Lavery v. Brigance*, 122 Okl. 31, 242 P. 239, 241 (1925). In *Lavery* the tenant had sued the landlord in tort for injuries sustained in an explosion which had resulted from an uncapped gas pipe *in the demised premises.* The statute there under scrutiny imposed upon the lessor the *new* duty to repair all "dilapidations," though at common law the rule of caveat emptor applied to real estate leases. The court barred the tenant's common-law action and held the lessee's statutory remedy was exclusive. The statute construed in *Lavery* had confined the lessee to either making the repair herself and deducting the expense from the rent or vacating the premises without incurring further liability. See also *Staples v. Baty*, 206 Okl. 288, 242 P.2d 705, 707 (1952), where the rule in *Lavery, supra,* which had limited the plaintiff there to the available *statutory* remedy, did not bar the tenant's common-law negligence action against the landlord because the harm occurred outside the leased premises. In *Staples,* the lessor, contrary to his legal duty, failed to maintain a *"common" stairway* which had been used by other tenants as well as by the plaintiff.

22. See *Bowles v. Neely*, 28 Okl. 556, 115 P. 344 (1911) (the court's syllabus ¶ 4).

23. 12 O.S.1981 § 2, *supra* note 11. See also the authorities cited *supra* note 12.

24. See *Ramirez v. Baran*, Okl., 730 P.2d 515, 518 (1986), where the court upheld the punitive damages award in a commercial-property tenant's action for *wrongful eviction and conversion* against his landlord whose conduct was malicious.

25. The terms of Art. 5 § 59, Okl. Const., provide: *"Laws of a general nature shall have a uniform operation* throughout the State, and where a general law can be made applicable, no special law shall be enacted." (Emphasis added.)

26. See 12A O.S.1981 § 1–103, *infra;* Uniform Commercial Code Comment to 12A O.S.1981 § 1–103, *infra; Shaw v. Union Bank and Trust Co., supra* note 7 at 955 (punitive damages are recoverable in a claim for wrongful dishonor of a bank item).

the Act sets residential tenants apart from commercial-property lessees by allowing only the former a double-damages recovery for a wrongful eviction upon a breach of the rental agreement. Without doubt the purpose of this special measure is to secure the aggrieved home renter from landlords' abuse or overreaching. Indeed, while this approach does afford a rational basis for the separate classification under the *contract* rubric, there is no like warrant to support a dichotomy of treatment in the *tort* regime.[27]

When one judicial interpretation of a statute will result in an *arbitrary* creation of two classes of apparently similarly situated litigants, and there are no distinguishing characteristics between them which would make the dichotomy concordant with our constitutional policy favoring uniformity of treatment for persons in the same class,[28] but another construction of the same statutory text would avoid the threatened disparity, *it is the duty of this court to give the enactment that meaning which will preserve the same right to both classes.*[29]

We have no cause to consider in this case whether a *legislative* abrogation of the *tort* remedy for all residential tenants would be consistent with our fundamental-law quest for uniformity. That question is not before us. Our task here is rather to decide whether, in the absence of an express or implied repeal of the wrongful eviction tort remedy, the § 123 double-damages measure of recovery for breach of the residential rental agreement is to be treated as an *exclusive statutory substitute* for the common law's parallel *ex delicto* claim. *To this dispositive question my answer must be in the negative.*

The court's pronouncement today abrogates a tort in the name of a statutory text that *expressly confines itself to contracts.*[30] The double-damages provision does not change the *contractual* character of the § 123 action. An increase in the

---

Oklahoma, like nearly every other state, has refused to treat the breach-of-warranty remedies of the Uniform Commercial Code as exclusive of manufacturers' products liability. See *Braden v. Hendricks,* Okl., 695 P.2d 1343, 1351 (1985). See also R. Hillman, J. McDonnell and S. Nickles, Common Law and Equity Under the Uniform Commercial Code, ¶ 15.01[3][c] at 15–9 (1985) ("It does not appear *that common-law liability for wrongful dishonor apart from* [12A O.S.1981] *Section 4–402* has been interred; given the right facts and the right advocate, it should blossom forth"). (Emphasis added.)
The terms of 12A O.S.1981 § 1–103 provide: *"Unless displaced* by the particular provisions of this Act [the U.C.C.], the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, *fraud, misrepresentation, duress, coercion,* mistake, bankruptcy, or other validating or invalidating cause *shall supplement* its provisions." (Emphasis added.)
The Uniform Commercial Code's Comment to 12A O.S.1981 § 1–103 states in pertinent part as follows:
"1. While this section indicates the continued applicability to commercial contracts of *all supplemental bodies of law except insofar as they are explicitly displaced by this Act,* the principle has been stated in more detail and the phrasing enlarged to make it clear that the 'validating', as well as the 'invalidating' causes referred to in the prior uniform statutory provisions, are included here. * * * " (Emphasis added.)

**27.** The division of tortfeasors into separate classes of "commercial" and "consumer" type is a stranger to our legal tradition. Tort victims are not unequally affected, since *all torts are unconscionable.* The court's construction of § 123 leaves the tortiously evicted residential tenant without a tort remedy, though the similarly aggrieved commercial-property tenant continues to be afforded that recourse. There is no less need to deter residential-property landlords from tortious eviction than there is to punish commercial-property owners for committing a like wrong.

**28.** See Art. 5 § 59, Okl.Const., *supra* note 25. "As between the persons and places *included* within the class upon which the law operates and those *excluded* from it there must be some distinctive characteristic warranting a different treatment and affording a practical and real basis for discrimination." *State v. District Court of Mayes County,* Okl., 440 P.2d 700, 704 (1968). See also *Haas v. Holloman,* Okl., 327 P.2d 655, 659 (1958); *Hamilton v. Oklahoma City,* Okl., 527 P.2d 14, 16 (1974); *Black v. Ball Janitorial Service, Inc.,* Okl., 730 P.2d 510, 514 (1986).

**29.** See *Special Indemnity Fund v. Dailey,* Okl., 272 P.2d 395 (1954) (the court's syllabus ¶ 1); *Earl v. Tulsa County Dist. Court,* Okl., 606 P.2d 545, 547–548 (1980); *Wilson v. Foster,* Okl., 595 P.2d 1329, 1333 (1979); *Chicago, R.I. & P. Ry. Co. v. Beatty,* 34 Okl. 321, 118 P. 367 (1911) (the court's syllabus ¶ 2).

**30.** See 41 O.S.1981 § 103, *supra* note 15.

quantum of damages available at common law by raising allowable recovery does not *ipso facto* create a new cause of action.[31] Nor does the inclusion of a multiple-damages provision alone make a statute penal.[32] Statutory allowance of double damages is not an *eo ipso* abrogation of punitive damages recovery.[33] Our own statutory regime for measuring reparations eloquently speaks to the contrary.[34]

Without any warrant either in the Act's text or in the common law's remedial regime the court today (1) assumes that § 123 abrogates the residential tenant's parallel *tort* remedy for wrongful eviction and (2) by judicial fiat dichotomizes the common-law tort remedy of wrongful eviction, making it unavailable to residential tenants but still invocable by aggrieved commercial-property tenants. There is no rational predicate for dichotomizing residential and commercial tenants in our tort regime.[35] The Act does not do it. Rather, it is the court's own overbroad judicial gloss that injects constitutional doubt into the distinctions left in the wake of today's opinion.

## IV.

## TODAY'S PRONOUNCEMENT IS AMBIGUOUS AND MAY CREATE A TRICHOTOMOUS DIVISION OF TENANTS WHICH WOULD BE OFFENSIVE TO OUR FUNDAMENTAL LAW

The court's pronouncement leaves in its wake a series of unanswered questions that will lead to legislatively unintended consequences offensive to the strictures of Art. 5 § 59, Okl. Const.[36] The opinion does not reveal whether the common-law tort remedy for wrongful eviction is made unavailable *only* to those residential tenants who stand in privity of contract with their dispossessors *or* to *all* persons who occupy the status of residential tenants. If the former is true, then an aggrieved residential tenant who is *without* privity of

**31.** *LaBarre v. Daneault,* 123 N.H. 267, 461 A.2d 89, 91 (1983).

**32.** *LaBarre v. Daneault, supra* note 31, 461 A.2d at 91; *Michaud v. City of Bangor,* 160 Me. 285, 203 A.2d 687, 690 (1964); *Dubreuil v. Waterman,* 84 Conn. 47, 78 A. 721, 722 (1911). Cf. *Crow v. Davidson,* 186 Okl. 84, 96 P.2d 70, 72–73 (1939), where the court characterized as "penal" a statute allowing recovery of treble damages for *"forcible"* dispossession of real estate. Multiple damages were disallowed there because the court regarded the claim as one for *"wrongful ejection."* The court implicitly held that the treble-damages statute was not applicable in the common-law action for *wrongful* ejectment, where punitive damages are recoverable.

**33.** In the Anglo–American legal tradition punitive damages as a mode of reparations is a more recent concept than that of multiple damages. The former comes from common-law development, while the latter is a creature of statute. The earliest English case allowing exemplary damages appears to be *Wilkes v. Wood,* 98 Eng. Rep. 489 (C.P.1763); the earliest reported American case seems to be *Genay v. Norris,* 1 S.C.L. (1 Bay) 6 (1784). See also *Pacific Mut. Life Ins. Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 1041–1042, 113 L.Ed.2d 1 (1991); *Louis Pizitz Dry Goods Co. v. Yeldell,* 274 U.S. 112, 116, 47 S.Ct. 509, 510, 71 L.Ed. 952 (1927), where the Court sustained as not offensive to due process a statute permitting exemplary damages in actions for wrongful death. *American statutes establishing multiple damages can be traced to* early colonial days. A 1648 Massachusetts act allowed double damages to impose "stricter accountability upon the community for its public works." Morris, Studies in the History of American Law at 251 (1959).

**34.** Punitive and multiple damages for the same claim can, in a proper case, co-exist in our statutory regime. See 23 O.S.1981 § 95, whose terms provide:

"The damages prescribed by this article are *exclusive of exemplary damages* and interest, except where those are expressly mentioned." (Emphasis added.)

Many Oklahoma statutes expressly prescribe multiple damages recovery. See, e.g., 23 O.S. 1981 § 69 (double rent for tenant's failure to vacate after giving notice of his intention to give up the premises); 23 O.S.1981 § 70 ("double the yearly value of the property" for the time of willfully holding over); 23 O.S.1981 § 72 (treble damages for wrongful injury to timber).

**35.** See *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 872, 31 L.Ed.2d 36 (1972) ("classifying tenants of real property differently from other tenants for purposes of possessory actions will offend the equal protection safeguard 'only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective'") (citations omitted).

**36.** For the terms of Art. 5 § 59, Okl.Const., see *supra* note 25.

contract with the landlord (a subtenant),[37] would be allowed to press for punitive damages and to secure a higher recovery than similarly situated residential lessees who are in privity with the evicting defendant. Even those residential tenants who are "bounden by privity" with their landlord *qua* owner of record would be without a *tort* remedy if they be wrongfully evicted by some third-party dispossessor who happens to be a stranger to the paramount title. The offensive trichotomy fashioned by today's holding would divide the single class of real property tenants into (a) residential tenants with privity of contract, (b) residential tenants who were wrongfully evicted by one not in privity with them and lastly (c) commercial-property tenants.[38]

If, on the other hand, the court intends today to abolish the tort remedy for *all* residential tenants, then there would be *no wrongful eviction remedy,* either *ex contractu or ex delicto,* for (1) the wrongfully evicted residential tenant who had no contract with the dispossessor *and hence cannot invoke the exclusive § 123 contract remedy* and (2) the residential tenant evicted by a stranger to the title of the landlord from whom the demise is held. The absurdity of this result is apparent.

## V.

### CONCLUSION

The court construes § 123 as repealing the tort remedy for tortiously evicted *residential* tenants while similarly situated commercial-property tenants are not equally affected. In the absence of a clear and express legislative direction to do away with a residential tenant's common-law *ex delicto* remedy, I would hold today that aggrieved residential tenants are free either to seek actual *cum* punitive damages—the recovery allowed by the common

law of torts [39]—or to pursue the double-damages *ex contractu* claim under § 123.

37. For the distinction between a subtenant, who generally is not in privity of contract with the landlord, and an assignee, who would be, see *Castle v. Double Time, Inc., supra* note 7 at 902–903.

38. See Part III of this opinion for a detailed explanation of the commercial-property tenant's status in the court's *dichotomous* division of the tort remedy's affordability.

39. See 23 O.S.Supp.1986 § 9(A), *supra* note 13.