(No. 25749.—

Edward Harper, Appellant, *vs.* Lulu May Sallee, Appellee.

*·Opinion filed Dec. 12, 1940—Rehearing denied June 4, 1941.*

MURPHY, J., specially concurring.
WILSON, J., dissenting.

REARICK & REARICK, for appellant.

MANN & STIFLER, and ASA S. CHAPMAN, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The Appellate Court for the Third District granted a certificate of importance, and Edward Harper has appealed from its judgment which reversed a decree of the circuit court of Vermilion County. *Harper v. Sallee,* 305 Ill. App. 85.

The facts disclosed are as follows: On March 22, 1928, William L. Sallee, and appellee, his wife, mortgaged 72 acres of land and both signed the mortgage note for $3000. Later this mortgage and note became the property of the Mutual Benefit Life Insurance Company. On December 24, 1930, the Sallees deeded the land to a third person, who

reconveyed an undivided two-thirds' interest to Sallee, and one-third to appellee. On February 2, 1931, Sallee gave a second mortgage on his two-thirds' interest to the Farmers State Bank of Rossville, Indiana, which secured payment of a note for $6885.25 signed by him and Alva M. Sallee, his son. This note was not signed by the appellee, but she signed the mortgage. William L. Sallee died testate on September 2, 1931, and by his will devised all of his property to the appellee and also made her executrix.

Later, the insurance company foreclosed its first mortgage and made the bank, which was the second mortgagee, Mrs. Sallee, individually and as executrix, Sallee's heirs, and others, defendants. By its answer and counter-claim the bank prayed foreclosure of the second mortgage on the undivided two-thirds' interest in the land. The chancellor found, in the foreclosure decree rendered November 23, 1935, that the insurance company had a first lien on the property; that the bank had a valid, second-mortgage lien on an undivided two-thirds' interest therein; that $9203.96 was due the bank, and that it was entitled to be paid thereon two-thirds of any excess that might remain out of the proceeds of sale, after the insurance company had been paid. In the event the defendants failed to pay the debt due the insurance company, interest and costs within twenty days, the master was ordered to sell the mortgaged premises free and clear of all liens, etc., and out of the proceeds to pay his fees, the costs, the debt due the first mortgagee, and to bring the surplus, if any, into court to abide the further order thereof. Payment was not made, and the insurance company bid in the land for $3000 at the master's sale on January 6, 1936. Unlike the second mortgage, the first mortgage contained an assignment of rents. After sale a deficiency existed and, by agreement, the insurance company collected the rents and on November 30, 1936, its claim was fully satisfied.

Although no redemption had then been made, on March 17, 1936, in the same suit, the bank obtained a decree which purported to foreclose the second mortgage on the undivided two-thirds' interest it covered. This decree ordered payment of $9203.96 with interest from November 23, 1935, and in default thereof that the two-thirds' interest be sold. No sale was attempted under this decree. On January 4, 1937, this decree was assigned to Harper by a written instrument which also purported to assign the second mortgage and the note evidencing the debt this mortgage secured. On the following day, January 5, 1937, within 12 months from the sale under the first foreclosure decree, Harper paid $3180 to the master in chancery to redeem the land. He received and recorded a redemption certificate. The certificate of purchase was surrendered and the insurance company accepted the redemption money.

In 1936, the appellant, Harper, did some fall plowing on the land and, on March 1, 1937, when Mrs. Sallee's tenant's lease ended, Harper took possession of the 72 acres without her consent and has retained it ever since. He did nothing further under the Redemption statute but, instead, filed this suit on May 18, 1937, against the appellee. The prayer of his complaint was that he be given a deed to the mortgaged premises and, by an amendment, he asked that, in the alternative, he be given a deed to the undivided two-thirds' interest covered by his second mortgage; that appellee be ordered to contribute one-third of the redemption money by a short day to be fixed by the court, and that in default of such payment, her one-third interest be sold.

In her counter-claim, Mrs. Sallee alleged that Harper was a tresspasser and that she was entitled to possession. She asked that plaintiff be compelled to account for rents during his possession and that he be ordered to surrender the land. The chancellor awarded Harper a deed to the

undivided two-thirds' interest in the land and contribution of a third of the redemption money paid by him. Mrs. Sallee was given one-third of the rents but her interest was ordered sold if she did not pay the balance of one-third of the redemption money. The master made the deed and Mrs. Sallee's one-third interest in the land was sold. She appealed, the decree was reversed and the cause was remanded, as above stated, with directions to dismiss the complaint and to grant the prayer of Mrs. Sallee's counter-claim.

Appellant correctly claims that the bank, his assignor, a defendant in the suit to foreclose the mortgage, was a junior mortgagee and had a right to redeem within twelve months from the foreclosure sale. (Ill. Rev. Stat. 1939, chap. 77, par. 18; *Ogle* v. *Koerner,* 140 Ill. 170; *Seligman* v. *Laubheimer,* 58 id. 124; *Whitehead* v. *Hall,* 148 id. 253.) He is also correct in contending that by reason of the assignment in evidence he was entitled to redeem. The assignment was of the second mortgage foreclosure decree (the validity of which is not questioned) and it also included the second mortgage and note. We cannot sustain appellee's contention that under *Fortier* v. *Darst,* 31 Ill. 212, and *Barrett* v. *Hinckley,* 124 Ill. 32, the appellant, to prove his case, had to introduce in evidence the second mortgage and note. The decision in the *Fortier case* was based on a forgery of an assignment and the fact that the complainant came into equity with unclean hands.. In the *Barrett case,* at page 41, it is said: "If, however, the rules and principles which obtain in courts of equity are to be applied, we would say, that by virtue of the assignment the appellee became the equitable owner of the note and mortgage, and that it gave him such an interest or equity respecting the land as entitled him to have it sold in satisfaction of the debt." The assignment was in evidence, here, and Harper and his assignor had the right to redeem.

Appellant's third, fourth and thirteenth points relied on for reversal amount to the contention that when he redeemed he was subrogated to the insurance company's rights under its certificate of purchase and that he has the same rights an assignee of that certificate would have. There is language in such cases as *Ogle* v. *Koerner, supra,* to the effect that a party who redeems is subrogated to the rights of the holder of the certificate of purchase. Regardless of their language, these decisions do not hold the redeeming judgment creditor is an assignee of the master's certificate of purchase. All that was decided in the *Ogle case* was that where the junior mortgagee redeemed under section 18 of the Judgments act, he was entitled not only to his mortgage lien but also to a lien for his redemption money, and the priority of these liens was not affected by the first mortgagee's deficiency judgment.

This court has held that a junior mortgagee who redeems may foreclose his second mortgage and have the land sold for the satisfaction of the mortgage debt plus his redemption money, (See, *Rose* v. *Walk,* 149 Ill. 60, 65; *Ebert* v. *Gerding,* 116 id. 216;) but if there was a true subrogation to all the original purchaser's rights, he would be entitled to a deed merely by waiting until the fifteen-months' period of redemption ended. It is obvious that this is not true.

There are also cases which contain language which tends to support appellant's argument that he was entitled to all the rights of the first mortgagee and was, in effect, an assignee of that mortgage when he redeemed from the sale under it. (*Illinois Nat. Bank* v. *Trustees of Schools,* 211 Ill. 500; *Ebert* v. *Gerding, supra.*) Appellant relies on other cases where, to protect his rights, a junior encumbrancer discharged the first mortgage, or redeemed, and was held to have priority over intervening liens for the money so paid. These cases depend upon the

facts and equities involved, and do not lay down the rule for which appellant contends. In none of them was the party who redeemed fully and completely subrogated to every right of the first mortgagee. A foreclosure decree and sale wipe out a mortgage, and by section 18 of the Judgments act redemption nullifies the certificate of purchase. (*Ogle v. Koerner, supra.*) Moreover, appellant's points relied on for reversal make no mention of a claim that he stands in the position of an assignee of the first mortgage. Appellant can only rely on the points stated by him as grounds for reversal. *Gyure v. Sloan Valve Co.* 367 Ill. 489, 492.

The original foreclosure decree found the amount due under the second mortgage and, later, the bank obtained a decree foreclosing it. This latter decree, although it was rendered after the foreclosure sale and before redemption, is not questioned by either of the parties and it was assigned to Harper. Under these facts, a junior mortgagee can redeem either under section 18 or section 20 of the Judgments act as a decree or judgment creditor. (*Whitehead v. Hall, supra.*) There, the junior mortgagee was a defendant in the suit to foreclose the first mortgage and he obtained, on the same day but in a separate suit, a decree foreclosing his mortgage. Immediately upon redemption, the master in chancery advertised and sold the redeemed land and the junior mortgagee received a deed at this sale in consideration of the redemption money, interest and costs, since no other bid was made. No execution had been issued and no other steps had been taken except as stated. However, this court held that the junior mortgagee obtained title and that since the statute had been followed as far as it could be, what was done by the master was valid and the deed passed title to the junior mortgagee purchaser.

Harper could have had, but has had no sale of any sort, either under the decree assigned to him or by virtue

of his redemption. He cannot claim legal title in fee as assignee of the first mortgage for that mortgage was entirely extinguished by the decree and foreclosure sale. The rents fully paid the insurance company the deficiency judgment due it. This payment in full was accomplished on November 30, 1936. Mrs. Sallee was then entitled to possession of the land, although the tenant had been put in possession under her oral agreement with the insurance company. The first assertion of a right to possession Harper made, after his assignment of January 4, 1837, was his act of taking possession of the whole tract about March 1, when the tenant's lease expired. This record does not show that Mrs. Sallee was ever consulted in the matter.

In *McCartney* v. *Hunt,* 16 Ill. 76, Hunt, a squatter, had built a house on McCartney's land, and rented it to a tenant who surrendered possession to McCartney when the latter served notice on him and demanded possession. Hunt obtained a judgment in a forcible entry and detainer suit and McCartney sued to enjoin him from proceeding under that judgment. This court dismissed his bill for want of equity and said: "The statute as construed by this court in several cases, expressly provides that he [Hunt] shall recover the possession in such a case, whether he be entitled to retain it or not. Although the complainant, by virtue of his legal title to the land, was entitled to the possession of it, as against the defendant who had no right there, except his bare possession, yet it is not consistent with the policy of the law, to allow the legal owner to right himself, and take possession of the land, either by open violence, or by secret intrigue with those who took the possession from the defendant." In defining "force" this court said in *Phelps* v. *Randolph,* 147 Ill. 335, 339: "If one enters into the possessions of another against the will of him whose possession is invaded, however quietly he may do so, the entry is forcible, in legal contemplation. The word 'force' in our statute means no more than the term *vi et armis*

does at common law,—that is with either actual or implied force."

In *Bugner* v. *Chicago Title and Trust Company,* 280 Ill. 620, the legal owner had gone into possession without leave of the party who claimed adverse possession. This court reaffirmed the rule stated above and followed its holdings in the *McCartney* and *Phelps* cases. Also, in *Farwell* v. *Warren,* 51 Ill. 467, 472, it said: "A landlord, or the owner of the fee, although entitled to possession of his property, and although he has suffered wrong, must resort to his legal remedy, precisely as does a creditor or other person having the legal right to a recovery. The quiet, good order and well-being of society require this, and all must conform to it." Also in *Gage* v. *Hampton,* 127 Ill. 87, 95, where the legal owner tore down a fence erected by a tax-title holder in possession of lands that were not otherwise improved, this court said: "When appellee saw that the property had been reduced to possession by another, by inclosing it with a fence, he had no right to interfere, in any manner whatever, with the possession of the property. His entry was that of a wrongdoer. He was a trespasser. (*Lee* v. *Town of Mound Station,* 118 Ill. 319.) If he claimed the title, when he found the lots in the possession of another his remedy was ejectment, where the title could be settled in a court of law. Surely he could not lay a foundation for a bill in equity by unlawfully invading the possession of another."

Harper and his assignor, were at most tenants in common with Mrs. Sallee. This record shows no consent on her part to Harper's act when he took possession. His redemption certificate did not entitle him to possession. (*Lightcap* v. *Bradley,* 186 Ill. 510.) He was in possession wrongfully and was a trespasser. His remedy was either by an action for forcible entry and detainer or in ejectment.

Harper says he was compelled to redeem *en masse* because this was the manner in which the property was sold

under the foreclosure of the first mortgage. Section 26 of the Judgments act (Ill. Rev. Stat., 1939, chap. 77, par. 26) permits any joint owner or a decree or judgment creditor of such joint owner to redeem the interest of the debtor from an execution or decree sale, by payment of the proportionate amount which would be required to redeem all of the land sold. Under this section redemption of an undivided interest is permissive. (*Hruby* v. *Steinman,* 374 Ill. 465, 471.) Harper redeemed *en masse* but that gave him no right to contribution at this stage of the proceeding. He, by that redemption, released the interest of Mrs. Sallee from the first mortgage and took it out of the certificate of purchase which was thereby made void.

The appellant also relies on *Schroeder* v. *Bozarth,* 224 Ill. 310, 317. But there it is said: "The judgment of Albert Welch, under which the redemption from the foreclosure sale was made, and through which Welch, by a resale, sought to obtain title to the premises in question, was not against Louisa C. Bozarth, but was against her husband, Asa Bozarth, and while the redeeming judgment creditor was forced to redeem from the foreclosure sale *en masse,* as the premises were sold under the foreclosure decree in that manner, he only acquired such title by such redemption and resale as Asa Bozarth had in and to the lands in controversy, which was a life estate." Thus, if Harper were correct in his contention that he had to redeem *en masse,* if at all, he would not be entitled to a lien on Mrs. Sallee's one-third interest. Similar principles are involved in *Fischer* v. *Eslaman,* 68 Ill. 78, *Huber* v. *Hess,* 191 id. 305, and *First Nat. Bank* v. *Gordon,* 374 id. 242, 245.

Harper had already redeemed under the statute. He was not entitled to redeem in equity. In *Ogle* v. *Koerner, supra,* it was said, at page 178: "That the principles applicable to equitable redemptions do not apply is obvious from a variety of reasons. * * * Again, McCarthy is not asking to be allowed to redeem, even by the original bill.

The redemption is a fact already accomplished, and he is only seeking to enforce equities to which he became entitled by having redeemed. Thirdly, McCarthy's redemption of said land not only professed to be but in fact was a statutory redemption from the foreclosure sale, and entitled him to all those rights, both legal and equitable, which the statute gives in case of such redemption."

The Appellate Court did not err in directing the circuit court to dismiss the complaint for want of equity and to grant the prayer of appellee's counter-claim.

*Judgment affirmed.*

Mr. JUSTICE MURPHY, specially concurring: I agree with the result reached in this opinion but not in all that is said therein.

Mr. JUSTICE WILSON, dissenting.