Tulio RAMIREZ, Mario Ramirez, both individually, and El Chalan, Inc., an Oklahoma corporation, Appellees,

v.

Ann BARAN, an individual, and McManaman and Company, an Oklahoma corporation, Appellants.

No. 61713.

Supreme Court of Oklahoma.

Dec. 9, 1986.

Wayne Campbell, Merson & Campbell, Oklahoma City, for appellees.

Loren L. Baker, Oklahoma City, for appellants.

ALMA WILSON, Justice:

The appellees, Tulio and Mario Ramirez, leased the premises in question for the purpose of operating a Mexican restaurant. The lease commenced on June 1, 1979 and was to expire on February 28, 1983. During the term of the lease the original landlord, one Pratt, sold the premises to McManaman and Company, a corporation wholly owned by the appellant, Baran.

In December of 1982 or January of 1983 the Ramirezes commenced negotiations for a lease renewal or an extension thereof with the new landlord, Baran. Baran had a new lease prepared. Upon examination of this proposed new lease, the Ramirezes negotiated several additional revisions. After agreeing to these revisions Baran subsequently presented a copy of an eleven page instrument to the Ramirezes on Thursday, February 24, 1983. The parties agreed to meet at the Ramirezes' restaurant on March 1, 1983 at three o'clock in the afternoon. The parties contemplated signing a new lease on this date. Thereafter, Mario Ramirez delivered the Ramirezes' copy of the proposed lease to his attorney for examination. The Ramirezes' attorney was to attend the March 1st meeting and return the proposed lease at that time. At the appointed date and time, the attorney did not appear. The Ramirezes contacted the attorney's office and were advised the attorney was out of the office. Mario Ramirez therefore left the restaurant at ap-

proximately two-thirty to pick up the lease at the attorney's office. Mario Ramirez was not present when Baran arrived. Baran told the elder Ramirez, Mario's father, that if the lease was not signed that day and if she did not hear from them by five o'clock that afternoon, Baran would lock them out. Baran left the restaurant after fifteen or twenty minutes, purportedly leaving a phone number where she could be reached. After obtaining the lease from the lawyer's office, Mario Ramirez returned to the restaurant. The telephone number left by Baran was called, but there was no answer.

The following morning, March 2, 1983, Baran, with the aid of a locksmith and private armed security guard, removed the old locks and locked the Ramirezes out of their business with new locks. The armed security guard patrolled the property. The Ramirezes were prevented from entering the premises for twenty-three days, either to operate the restaurant or to collect their personal goods. During this twenty-three day lock-out, the Ramirezes alleged they incurred damages in the amount of $6,300 from food spoilage and damage to restaurant equipment.

The Ramirezes filed suit in District Court for wrongful eviction and conversion of personal property and punitive damages. After a trial by jury, the Ramirezes were awarded $6,300 for damages they incurred from food spoilage and damage to restaurant equipment and $50,000 for punitive damages.

■■■ The Court of Appeals reversed the jury verdict judgment upon the basic assumption that the act of a landlord in locking tenants out by unilaterally changing door locks falls short of *forcible* re-entry. It has long been the law in Oklahoma that a landlord may *not* resort to self-help to gain possession of realty, but must regain possession through an action at law.

In *Casey v. Kitchens,* 168 P. 812 (Okl.1917) this Court held:

> One who is in the peaceable and quiet possession of land and premises has the right of possession, that is to say, a right arising from possession alone, *which precludes one who has a right to possession from ousting him without resorting to an action in Court and, if he is deprived of such possession against his will and without resort to the courts, he may maintain the action for the possession from which he has been excluded, even against one who has such right as would have entitled him to recover possession by action.* [Emphasis added]

We today reiterate the viability of our holding in *Casey v. Kitchens, supra.* In order to constitute force as contemplated by the Forcible Entry and Detainer Act, it is *not* necessary that actual violence be used. If a person takes possession of real property during the temporary absence and without the consent of one who is in peaceable and quiet possession of realty and bars the former occupant from possession, persistently refusing to surrender the premises, he is guilty of *forcible* and unlawful detainer. The termination of a lease is to be determined by the traditional principles of real property and contract law.[1] Moreover, statutory prescriptions regarding forcible entry and detainer provide the *exclusive* procedure for ousting a hold-over tenant.[2] Under the statutes and the cases, it is wholly immaterial whether the tenant be in possession of either residential or commercial property, a landlord may *not* resort to force to gain possession of a leased premise. Changing a lock to exclude a tenant from possession against his or her will has been found to constitute forceful entry and amounts to wrongful detainer as a matter of law.[3] If one enters into the possession of another against the will of him whose possession is invaded, however quietly he may do so, the entry is forcible in legal

1. *Kerr-McGee Corp. v. Cutter,* 564 P.2d 215 (Okl. 1977).

2. 12 O.S. 1981 § 1148.1 *et seq.*

3. *See,* e.g. *Berg v. Wiley,* 264 N.W.2d 145 (Minn. 1978); *Jordan v. Talbot,* 55 Cal.2d 597, 12 Cal. Rptr. 488, 361 P.2d 20 (1961).

contemplation.[4] The breaking of locks by a landlord is sufficient to constitute forcible entry.[5] The Court of Appeals thus erred in assuming that the landlord's actions in taking possession of the restaurant premises by removing the lock was peaceable and not by force or violence.

The Court of Appeals found no reversible error on the remaining issues raised by the appellant, including the jury's award of actual damages to the Ramirezes in the amount of $6,300 and the jury's refusal to require the Ramirezes to pay rent for the month of March, 1983. However, because the Court of Appeals deemed the landlord's actions in taking possession of the premises "peaceable", that court granted a new trial on the ground that it was unable to determine whether punitive damages were awarded as a result of the conversion or as a result of the trial court's instruction to the jury that a landlord may not use self-help. Our previous pronouncements herein attest to the correctness of the challenged instruction. The necessity for new trial on this basis is thus eradicated.

■■■ We further find no ground for granting a new trial upon the appellant's assertion that the jury was without any evidentiary basis upon which it could properly assess exemplary damages. The consideration and allowance of exemplary damages is proper in an action for conversion where the party's actions are wanton, malicious and intentional.[6] There is competent evidence in the record to support the jury's determination that the actions of the landlord in this case were of such a wrongful and forcible nature as to warrant consideration of punitive damages. The trial court did not err in allowing the jury to determine the issue on the evidence presented. While evidence of a defendant's financial worth is admissible in assessing punitive damages, it is not an absolute prerequisite.[7] If a defendant's financial worth is meager, it would be to his advantage to introduce such evidence in order to mitigate the damage award.[8] There is evidence in the record of ownership of two restaurant locations and a 23–unit apartment complex by Baran's solely owned corporation. Moreover, although Baran testified, she furnished no evidence of financial worth or encumbrances to mitigate the request of the opposing parties for punitive damages in the amount awarded. Information concerning a defendant's financial worth is peculiarly within the knowledge of the defendant. Where a defendant testifies, but declines to furnish such information, that defendant should not be heard to complain of lack of evidentiary support for the award.[9] The burden thereby rests with the defendant complaining of an excessive jury award of punitive damages. Under these circumstances, we decline to interfere with the jury's exemplary damage verdict on grounds of alleged excessiveness.

■■■ We agree with the Court of Appeals that the remaining errors complained of by the appellant do not comprise reversible error. There is testimony in the trial transcript from which the jury could find actual damages in the amount of $6,300 were incurred as a result of the self-help eviction and conversion. Appellees' evidence was that they incurred a loss of frozen food in the amount of $1,200; a loss of dry food in the amount of $400; and damage to a restaurant food fryer amounting to $3,500, all of which occurred as a result of the wrongful eviction and conversion. Additionally, Mr. Ramirez testified he lost wages totalling $1,200 because he was excluded from the restaurant premises and withheld the

4. *Harper v. Sallee,* 376 Ill. 540, 34 N.E.2d 860 (1941).

5. *Saferian v. Baer,* 105 Cal.App. 238, 287 P. 142 (1930); *California Products v. Mitchell,* 52 Cal. App. 312, 198 P. 646 (1921).

6. *Davidson v. First Bank and Trust Co.,* 609 P.2d 1259 (Okl.1976).

7. *Rinaldi v. Aaron,* 314 So.2d 762 (Fla.1975).

8. *Fletcher v. Western National Ins. Co.,* 10 Cal. App.3d 376, 89 Cal.Rptr. 78 (Cal.App.1970).

9. *Charles v. Texas Co., et al.,* 199 S.C. 156, 18 S.E.2d 719 (1942).

use of his personal property. Though appellant challenged the amount of actual damages incurred, it was within the province of the jury to determine the credibility of the witnesses and the weight to be given the parties' testimony. On appeal, if there is any evidence reasonably tending to support a jury verdict, it will not be disturbed by this Court.[10] The actual damage award is affirmed.

We likewise find no reversible error in the trial court's exclusion of certain bills from evidence and the jury's refusal to require the Ramirezes to pay rent during the month of March, 1983, for the restaurant premises from which they were excluded and refused use thereof. Appellant's arguments are unsupported by any citation of authority and are insufficient to overcome the presumption in favor of the correctness of the trial court's decision.[11]

The opinion of the Court of Appeals is vacated. The trial court's judgment on jury verdict is reinstated.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF COURT OF APPEALS VACATED; JUDGMENT ON JURY VERDICT REINSTATED.

DOOLIN, V.C.J., and LAVENDER, OPALA, KAUGER, SUMMERS, JJ., concur.

SIMMS, C.J., and HODGES and HARGRAVE, JJ., concur in actual damages, dissent as to punitive damages.

---

10. *Hames v. Anderson,* 571 P.2d 831 (Okl.1977).

11. *Horst v. Sirloin Stockade, Inc.,* 666 P.2d 1285 (Okl.1983).