1997 OK 81

The YWCA OF OKLAHOMA CITY; C&H Powerline Construction Co., Inc., Ronnie's Signs, Inc.; Troy Wesnidge; Flip's Wine Bar & Trattoria, Inc.; John Vance Motors; Dalmarc Enterprises, Inc.; E & H Transfer, Inc.; Chris Hunt Water Hauling; City Glass I and II; Grisham Construction Co.; Century Martial Arts Supply, Inc.; and Oklahoma Steel & Wire Co., Inc., Petitioners,

v.

The Honorable Gordon MELSON, Judge of the District Court of Seminole County, Oklahoma; and Dale Clayton Thompson, Sr.; and Shirley Thompson, husband and wife, Respondents.

PROGRESSIVE BRASS
MANUFACTURING
CO., Petitioner,

v.

The Honorable Gordon R. MELSON, Judge of the District Court of Seminole County, Wewoka Division, 22nd Judicial District, Respondent.

Nos. 88316, 88339.

Supreme Court of Oklahoma.

June 24, 1997.

Bradley D. Brickell, Mahaffey & Gore, P.C., Oklahoma City, for Petitioners in Case No. 88,316; John W. Hunt and Lucy S. Kroblin, Howard & Widdows, P.C., Tulsa, for Petitioner in Case No. 88,339.

B.J. Cooper and William C. McAlister, Cooper & McAlister, P.C., Oklahoma City, for Respondents.

OPALA, Justice.

¶ 1 The issues we are asked to decide in this original proceeding are whether in the *pretrial discovery stage* (1) a tort defendant may be compelled to produce financial rec-

ords *in advance of* the judge's in-trial decision that would submit to the jury the plaintiff's plea for punitive damages and (2) if the materials sought by the plaintiff be discoverable at that stage, should the court hold a hearing to consider a requested protective order by whose terms the discovered material would remain under seal until the punitive-damages phase of the trial? We answer both questions in the affirmative.

■ ¶2 Dale Clayton Thompson, Sr. and his wife Shirley (Thompson) sued certain members of a self-insurance association organized by a group of employers (employers' group or group) to provide workers' compensation benefits to their employees. Dale had been injured in the course of his employment. He secured in the Workers' Compensation Court an award of benefits, but was unsuccessful in obtaining payments that were due. When the employers' group declared itself unable to pay, Dale commenced a district court action. He then received a payment upon his award. At that point he amended the claim by including a punitive-damages plea for the group's alleged "bad faith" in failing to satisfy the award.[1] In the pretrial stage of the action the respondent judge ordered that the group's financial statements and tax returns stand subject to discovery, *rejecting the group's request for a protective order.* The hearing transcript (but not the order's text) reveals the judge's view that, under the provisions of Oklahoma's Discovery Code, financial records are indeed discoverable in advance of trial. In his opinion, the Code supplanted all earlier jurisprudence. The latter *proscribes pretrial discovery of a tort defendant's financial condition.*[2]

¶3 We hold that although the documents in contest here may indeed be the subject of pretrial discovery, their fitness, *qua* sensitive financial records, for protection from *premature public disclosure* as well as from pre-

trial delivery should be reconsidered upon their *in camera* inspection.

## I.

## THE ANATOMY OF LITIGATION

¶4 Claimant Dale Clayton Thompson, Sr., sustained in 1987 an on-the-job injury while working for Bullard's Oilfield Service. Found temporarily totally disabled, he was granted benefits by the Workers' Compensation Court. The award was not appealed. After Thompson failed to receive the payments when due, he brought a district court action against his employer and numerous members of the employers' unincorporated self-insurance group.

¶5 Although, after the suit's commencement, the group made a payment upon the compensation award, the record is unclear whether the entire obligation has been satisfied. Thompson's district court petition was later amended by the addition of an exemplary-damages plea for "bad faith refusal to pay the benefits."

¶6 To support his exemplary-damages plea Thompson demanded the group's pretrial production of certain documents with financial information. His quest included tax returns, financial statements, confidential business deeds, transfers of property, stock certificates, certificates of deposit, and bank statements. The group requested a protective order. The respondent judge *limited the scope of compelled discovery* to "complete financial statements and complete federal and state income tax returns for the years 1991 to the present," but his ruling declined otherwise to protect the compelled material. Respondent's order would allow for the "expansion" of discovery if the tax returns and financial statements did not prove "sufficient

---

1. Presently pending below are motions for summary judgment, in which the group argues that, for the purpose of assessing exemplary damages, it should not be considered "an insurance company." These motions stand undecided and the issue is not tendered for our resolution in this proceeding. An appellate court will not make first-instance determinations of disputed law or

fact issues. *Bivins v. State ex rel. Okl. Mem. Hosp.*, 1996 OK 5, 917 P.2d 456, 464.

2. In *Cox v. Theus*, Okl., 569 P.2d 447 (1977), the court held that a defendant's financial worth is not a proper subject of a pretrial discovery inquest.

to disclose ... financial information about the Defendants' financial worth."

¶ 7 The group, which assails in this proceeding the discovery order's *enforceability*, seeks prohibition. Reliance is placed on extant jurisprudence that proscribes pretrial discovery of a defendant's financial worth based on no more than *allegations* of bad faith.[3] Thompson reminds us that the provisions of 12 O.S.1971 § 548 (now repealed),[4] which *at one time* required "good cause" for the production of documents, stand superseded by the Oklahoma Discovery Code, 12 O.S. 1991 § 3226 *et seq.* (Discovery Code or Code). It is argued that the new statute's provisions, 12 O.S.1991 § 3226(B)(1),[5] do not contain the "good cause" requirement and would hence allow the pretrial discovery sought by him here.

¶ 8 We take original cognizance of these causes to re-examine pertinent jurisprudence of yore in light of massive statutory revisions that were enacted since this court's last opportunity in *Cox v. Theus (Cox)*[6] to place a gloss upon the provisions of the now-repealed § 548.

---

3. *See Cox v. Theus,* note 2, *supra,* at 449.

4. The earlier discovery statute, 12 O.S.1971 § 548, which though in force when *Cox v. Theus, supra,* note 2, was promulgated, was repealed in 1982. It provid*ed* :

"*Upon motion of any party showing good cause and upon notice to all other parties, and subject to the equitable power of the court to protect any party or witness from annoyance, embarrassment, or oppression,* the court in which an action is pending may (1) order any such party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, motion picture film or negatives thereof, developed or undeveloped photographic film, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of examination permitted by deposition and which are in such parties' possession, custody or control, or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon within the scope of which examination is now permitted by deposition. This order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just." (Emphasis supplied.)

¶ 9 II.

## OKLAHOMA'S STATUTORY SCHEME OF YORE, AS WELL AS HER INTERPRETATIVE JURISPRUDENCE, DISALLOW PRETRIAL DISCLOSURE OF A DEFENDANT'S FINANCIAL RECORDS.

¶ 10 The statute that governed discovery of documents at the time of our decision in *Cox* was enacted in 1965 as 12 O.S. § 548.[7] That statute provided that *any party in the case* could request by motion the production of documents for inspection and copying (and for other purposes pertinent to that kind of evidence).[8] "Good cause" was required to be shown.[9] The trial judge was vested with "equitable power" to protect parties and witnesses from disclosures which could cause "annoyance, embarrassment, or oppression."[10]

¶ 11 In *Cox v. Theus* this court was called upon to examine the provisions of 12 O.S. 1971 § 548 with a view to determining if "good cause" could be shown to support the plaintiff's quest—made at the *pretrial*

---

5. The pertinent provisions of 12 O.S.1991 § 3226(B)(1) are:

"B. DISCOVERY SCOPE AND LIMITS. *Unless otherwise limited by order of the court in accordance with the Oklahoma Discovery Code,* the scope of discovery is as follows:

1. IN GENERAL. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." (Emphasis supplied.)

6. *See Cox v. Theus,* note 2, *supra.*

7. For the provisions of 12 O.S.1971 § 548, *see* note 4, *supra.*

8. *See* note 4, *supra.*

9. *See* note 4, *supra.*

10. *See* note 4, *supra.*

stage—for production of financial records to be used in support of the petition's plea for punitive damages.[11] Punitive (exemplary) damages were then governed by the provisions of 23 O.S. 1971 § 9, originally enacted in 1910.[12] That one-sentence section authorized "damages for the sake of example" when a tort defendant "was found guilty" of "oppression, fraud, or malice."[13] The 1910 antecedent of 23 O.S.1971 § 9 *neither* set a stage for special proceedings *nor* required the defendant's "financial condition" to play a role in the punitive award's assessment.[14]

¶ 12 Because in *Cox* the discovery was sought at the *pretrial stage* on *mere allegations* in plaintiff's pleading, it was declared unsupported by "good cause" and subject to denial as premature.[15] Only after *evidence* adduced *at trial* would provide the basis for punitive damages' *submission* could plaintiff compel defendant's disclosure of relevant financial documents.[16]

¶ 13 In short, *Cox* singled out the discovery of one's personal financial records as a

*protected class* and pronounced it *exempt* from the ordinary pretrial disclosure process. There, the court concluded that no "good cause" was shown—in the § 548 sense—to compel the *pretrial* disclosure sought.[17] The version of 23 O.S.1971 § 9 then in force tended to accord with the *Cox* view. *Financial worth was not yet statutorily identified as an element of proof in exemplary-damages proceedings.*[18]

¶ 14 The Oklahoma Discovery Code, 12 O.S.1991 §§ 3226 *et seq.*, was enacted in 1982. Its provisions *replaced* the earlier § 548. The text of § 3226(B)(1) introduced a broader discovery scope.[19] Its language did *not* cast the "good cause" requirement upon the party *seeking* discovery, but allowed disclosure demands to be "otherwise limited by order of the court in accordance with the Oklahoma Discovery Code."[20]

¶ 15 Discovery limitations are found in subsection (C) of 12 O.S.1991 § 3226.[21] That

---

**11.** *See Cox v. Theus, supra,* note 2.

**12.** The *earliest* version of the statute that governs exemplary damages, R.L.1910 § 2851 (later 23 O.S.1941 § 9), was enacted in 1910. It provided:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

The 1910 statute, 23 O.S.1971 § 9, was still in force when *Cox v. Theus,* note 2, *supra,* was promulgated. It was revised in 1986 and then carried into the next decennial compilation as 23 O.S.1991 § 9(A). For the provisions of the last cited statute, *see* note 24, *infra.*

**13.** *See* note 12, *supra.*

**14.** *Ramirez v. Baran,* 1986 OK 76, 730 P.2d 515, 517.

**15.** *See Cox v. Theus,* note 2, *supra,* at 449.

**16.** *See Cox v. Theus,* note 2, *supra,* at 450.

**17.** *See Cox v. Theus,* note 2, *supra,* at 449.

**18.** For the provisions of the 1910 version of 23 O.S.1971 § 9, *see* note 12, *supra.*

**19.** For the provisions of 12 O.S.1991 § 3226(B)(1), *see* note 5, *supra.*

**20.** *See* note 5, *supra.*

**21.** The pertinent provisions of 12 O.S.1991 § 3226(C) are:

"C. PROTECTIVE ORDERS. 1. Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer, either in person or by telephone, with other affected parties in an effort to resolve the dispute without court action, and *for good cause shown, the court in which the action is pending or on matters relating to a deposition, <u>the district court in the county where the deposition is to be taken may enter any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense,</u> including one or more of the following:

a. that the discovery not be had,

b. that the discovery may be had only on specified terms and conditions, including a designation of the time or place,

c. that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery,

d. that certain matters not be inquired into, or that the scope of the discovery be conducted with no one present except persons designated by the court,

e. that a deposition after being sealed be opened only by order of the court,

f. that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way, and*

provision *shifts the burden* of showing "good cause" to the party who *opposes* discovery.[22] Just as it was the case under 12 O.S.1971 § 548, so under the Code the trial judge may consider whether the discovery sought would cause "annoyance, embarrassment, or oppression." In order to prevent unauthorized disclosure from taking place, a *protective order* may be granted, which could *limit* or *disallow* the discovery, or place some documents under seal, "to be opened as directed by the court." [23]

¶ 16 The 1910 version of 23 O.S.1971 § 9 (which originally governed exemplary damages) underwent yet another revision in 1986 when it was replaced by 23 O.S.Supp.1986 § 9(A).[24] The 1986 scheme required a midtrial *judicial determination,* to be effected at the conclusion of the plaintiff's case in chief, that there was sufficient evidence for the jury to consider an exemplary damages award in excess of actual damages.[25] The 1986 text was repealed and replaced in 1995

by the provisions of 23 O.S.Supp.1995 § 9.1. The latter language is presently in force.[26] Under the new procedure the jury is now specifically authorized to consider in its deliberations the *financial condition of the defendant.*[27] The 1995 version requires a *two-phase* trial process (the second of which is statutorily referred to as a "separate proceeding"), which calls for a *particularized verdict finding* that the evidence meets the standards for an exemplary-damages award.[28]

■ ¶ 17 The after-enacted provisions of the Discovery Code, coupled with the new punitive-damages submission regime, clearly call for our re-examination of *Cox.* The Discovery Code gives no support for setting apart the process of discovery for exemplary-damages proof as a separate disclosure rubric. *All* discovery must be filtered through the procedure established by 12 O.S.1991

*g. that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court."* (Emphasis supplied.)

**22.** *See* note 21, *supra.*

**23.** *See* note 21, *supra.*

**24.** The 1986 version of 23 O.S.Supp.1986 § 9(A) provided:

"A. In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant, in an amount not exceeding the amount of actual damages awarded. Provided, however, if at the conclusion of the evidence and prior to the submission of the case to the jury, the court shall find, on the record and out of the presence of the jury, that there is clear and convincing evidence that the defendant is guilty of conduct evincing a wanton or reckless disregard for the rights of another, oppression, fraud or malice, actual or presumed, then the jury may give damages for the sake of example, and by way of punishing the defendant, and the percentage limitation on such damages set forth in this section shall not apply."
The 1986 statute was repealed in 1995, and replaced by 23 O.S.Supp.1995 § 9.1. For the provisions of this most recent enactment, *see* note 26, *infra.*

**25.** *See* note 24, *supra.*

**26.** The pertinent provisions of 23 O.S.Supp.1995 § 9.1 are:

"A. *In an action for the breach of an obligation not arising from contract, the jury, in addition to actual damages, may, subject to the provisions and limitations in subsections B, C and D of this section, give damages for the sake of example and by way of punishing the defendant based upon the following factors:* the seriousness of the hazard to the public arising from the defendant's misconduct; the profitability of the misconduct to the defendant; the duration of the misconduct and any concealment of it; the degree of the defendant's awareness of the hazard and of its excessiveness; the attitude and conduct of the defendant upon discovery of the misconduct or hazard; in the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; *and the financial condition of the defendant.*
"B. Category I. *Where the jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others, or an insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured, the jury, in a separate proceeding conducted after the jury has made such finding and awarded actual damages, may award exemplary damages . . . ."* (Emphasis supplied.)

**27.** *See* note 26, *supra.*

**28.** *See* note 26, *supra.*

§ 3226(C), which would allow, upon "good cause," a *protective order* if sensitive material is sought to be produced.[29] The new submission procedure for exemplary damages clearly *authorizes* (1) a "separate" trial stage for the jury consideration of that award and (2) submission of financial-worth proof for assessing the amount of that award. *It neither declares nor authorizes any form of interim moratorium on compelled pretrial production of financial records.*[30]

¶18 Neither in the Discovery Code *nor* in the present text of 23 O.S.Supp.1995 § 9.1 did the legislature craft a separate procedural regime for compelled disclosure of information needed in the punitive-damages stage. *Pretrial* discovery of a defendant's financial condition serves to protect the uninterrupted continuity of the trial process and a smooth transition into the punitive-damages stage. Objections to production of private financial documents may be made under the terms of 12 O.S.1991 § 3226(C) to protect the defendant's legitimate claims to privacy. Once an objection is interposed, equitable powers should be exercised to decide whether (a) discovery is warranted and (b) if so, whether a protective order is one's due.

¶19 **III.**

**PRESENT STATUTORY REGIME THAT GOVERNS DISCOVERY AND RECENT ENACTMENTS DEALING WITH PRETRIAL DISCLOSURE OF A DEFENDANT'S FINANCIAL CONDITION SOUGHT IN SUPPORT OF PLAINTIFF'S PLEA FOR EXEMPLARY DAMAGES CAN BE HARMONIZED TO PROTECT A DEFENDANT'S RIGHT OF PRIVACY WITHOUT RIGIDLY INTERPOSING UNDUE DELAY IN THE TRIAL PROCESS.**

¶20 This court's original jurisdiction affords litigants an available remedy for resisting impermissibly compelled pretrial discovery.[31] An appeal may not always be adequate to protect a party's quest for withholding privileged or confidential information. Once released at nisi prius, the materials sought to be shielded would no longer receive the law's palladium.[32] If this were to occur, waiting to press one's grievance by the ordinary remedy of appeal would invariably reduce a lively controversy to but an abstract issue and call for relief that would be patently both worthless and ineffective.[33]

¶21 *Pre-Code* jurisprudence viewed proof of a defendant's financial condition to be the subject of legitimate discovery inquest *only* after the plaintiff's *evidence* was judicially found sufficient for submission of the punitive-damages plea to the trier.[34] A mere *allegation* in the pleading did not make a defendant's financial records vulnerable to disclosure.[35] As for the production of income tax records, jurisprudence allowed their midtrial discovery, but cautioned the nisi prius bench to limit a party's examination of tax returns, even when personal income was in contest, to the issues relevant to the case.[36] Once the trial had begun, and the court had cleared punitive damages for submission to the trier, disclosure of financial information became compellable at midtrial.[37]

¶22 Since the repeal of 12 O.S.1971 § 548 and the enactment of the Discovery Code,[38] the litigant who *seeks* the production

---

**29.** *See* note 21, *supra.*

**30.** *See* note 26, *supra.*

**31.** The remedy was made available by *Carman v. Fishel*, Okl., 418 P.2d 963 (1966), with restrictive gloss placed on it in *Tuller v. Shallcross*, 1994 OK 133, 886 P.2d 481, 485. *See also Lisle v. Owens*, Okl., 521 P.2d 1375, 1376 (1974); *Cowen v. Hughes*, Okl., 509 P.2d 461, 462 (1973).

**32.** *See* note 31, *supra.*

**33.** *Kern v. Gleason*, Tx.App., 840 S.W.2d 730, 733 (1992).

**34.** *See Cox v. Theus*, note 2, *supra*, at 450.

**35.** *See Cox v. Theus*, note 2, *supra*, at 449.

**36.** *Jones Packing Company v. Caldwell*, Okl., 510 P.2d 683, 684 (1973); *Matchen v. McGahey*, Okl., 455 P.2d 52, 56 (1969).

**37.** *Basden v. Mills*, Okl., 472 P.2d 889, 895 (1970); *Fawcett Publications, Inc. v. Morris*, Okl., 377 P.2d 42, 53 (1962).

**38.** For the provisions of 12 O.S.1991 § 3226(B)(1), *see* note 5, *supra*. For the pertinent provisions of 12 O.S.1991 § 3226(C), *see* note 21, *supra*.

of documents is no longer required to show "good cause" for their demand. Because the new statutory regime *shifts* the "good cause" burden to the party who *opposes* discovery, it is the latter litigant who bears the responsibility to establish an impermissible invasion of privacy or "annoyance, embarrassment, oppression, or undue burden or expense."[39] *In camera inspection with a protective order should be sought if discovery material is to be withheld in whole or in part or be merely shielded from public view.*[40]

¶ 23 The provisions of 12 O.S.1991 § 3226(C)—which allow for protective orders—can easily be harmonized with those of the current 23 O.S.Supp.1995 § 9.1. The latter *expressly authorizes* the financial condition of a defendant to be inquired into for assessment of the award that is sought at the punitive-damages stage.

¶ 24 A plaintiff's *pretrial* quest for financial information from the defendant (to be used in a § 9.1 punitive-damages phase of the trial) should be decided in a § 3226(C) adversary hearing that is to consider the opposing litigant's quest for protection. The plaintiff's right to prepare for trial and to avoid delay in the evidentiary process should be *balanced* against the defendant's legitimate claim to privacy.[41] An *in camera* inspection of the documents sought to be withheld from discovery or from public disclosure is the preferred way to protect the interests of both parties.[42]

### IV.

### SUMMARY

¶ 25 Statutory changes effected by the provisions of 23 O.S.1995 Supp.1995

**39.** *See* note 21, *supra*.

**40.** *See* note 21; *supra; see also Maynard v. Heeren*, 1997 SD 60, 563 N.W.2d 830 (1997).

**41.** In *Seattle Times Company v. Rhinehart*, 467 U.S. 20, 32, 104 S.Ct. 2199, 2207, 81 L.Ed.2d 17 (1984), when discussing the federal rules of discovery (upon which the Oklahoma state procedure is patterned), the Court stated:

"Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c). It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; *discovery also may seriously implicate privacy interests of litigants and third parties . . . There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes. . . .* As stated by Judge Friendly in *International Products Corp. v. Koons*, 325 F.2d 403, 407–408 (C.A.2 1963), '[w]hether or not the Rule itself authorizes [a particular protective order] . . . we have no question as to the court's jurisdiction to do this under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices' . . . The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for

the authorization of protective orders." (Emphasis supplied.)

**42.** For the correct procedure in conducting an *in camera* inspection, the court in *Maynard v. Heeren*, 1997 SD 60, 563 N.W.2d 830 suggests and we recommend these steps:

"The following reflects a compilation of various court rules from other jurisdictions setting forth a procedure for in camera inspection: If an objection is made on a claim of privilege, the burden is on the objecting party to request an in camera inspection and to provide the documents for review. The request should contain the factual and legal basis to support the claimed privilege or explain how the privilege though waived makes the material nonetheless irrelevant for discovery purposes. The objecting party should review the documents and note with specificity any portions to which the claimed privilege does not apply. The objecting party should provide the documents to the judge presiding in the case, enclosed in a sealed and labeled container accompanied by an explanatory cover letter. The cover letter should identify file number and caption of the proceeding and explain the nature of the sealed materials, without compromising its essential secrecy. The container should be marked 'IN CAMERA REVIEW' in bold print. Each page for which a privilege or relevancy objection is asserted shall be marked 'privileged' or 'irrelevant' or both. When the court opens this container it should isolate the materials it deems not discoverable and reseal it leaving the discoverable materials unsealed. Without revealing the specific nature of the nondiscoverable material the court should explain its ruling on the record for the benefit of the parties. The sealed material should be filed with the clerk so that it may be later available for appellate review."

§ 9.1 [43] and those introduced by the Oklahoma Discovery Code, 12 O.S.1991 § 3226(B)(1) as well as by § 3226(C),[44] call for today's re-examination of *Cox.* Section 3226(B)(1) of the Code allows *pretrial* discovery of unprivileged material relevant to the issues in the case. Section 9.1 *explicitly* authorizes the *financial condition of the defendant* to be inquired into for introduction in a punitive-damages-assessment phase of trial. A plaintiff's right to discovery, which is not statutorily unlimited, stands subject to judicial supervision.[45] Upon the adversary's motion for a protective order under the terms of 12 O.S. § 3226(C), the trial judge *should consider* whether the plaintiff's discovery request is needlessly or excessively intrusive, burdensome, or oppressive.[46] If so, discovery should be limited, and if need be, it may be disallowed.[47] In the cases here in contest, the safeguards of § 3226(C) have been invoked (by the employers) to protect the group's claim to privacy. The respondent judge is hence directed to *re-examine* his extant order for its conformity to the views expressed in today's opinion in an adversary hearing to be conducted after this pronouncement becomes effective, and upon an *in camera* inspection, if one is sought. Because the court is confident that the respondent will proceed in accordance with the views we express today, it is unnecessary to grant the prerogative writ sought against him.[48]

¶26 ORIGINAL JURISDICTION IS ASSUMED; THE TWO CAUSES ARE CONSIDERED AND DISPOSED OF BY A SINGLE OPINION; RESPONDENT JUDGE IS DIRECTED TO CONFORM HIS DISCOVERY ORDER TO THE STANDARDS ARTICULATED IN THIS OPINION AND TO PROCEED FURTHER IN A MANNER CONSISTENT WITH TODAY'S PRONOUNCEMENT.

¶27 KAUGER, C.J., SUMMERS, V.C.J., and HODGES, OPALA, ALMA WILSON and WATT, JJ., concur.

LAVENDER and SIMMS, JJ., dissent.

HARGRAVE, J., not participating.

---

**43.** For the pertinent provisions of 23 O.S.Supp. 1995 § 9.1, *see* note 26, *supra.*

**44.** For the provisions of 12 O.S.1991 § 3226(B)(1), *see* note 5, *supra.* For the pertinent provisions of 12 O.S.1991 § 3226(C), *see* note 21, *supra.*

**45.** Acceptable boundaries of judicial discretion in discovery matters call for *balancing* the plaintiff's right to relevant evidence against the defendant's right to privacy. Even if the information sought is within the bounds of discovery, the production of sensitive documents should be allowed in the least intrusive manner. *State ex rel. Anheuser v. Nolan,* Mo.App., 692 S.W.2d 325 (1985).

**46.** *See* notes 21 and 45, *supra.*

**47.** *See* notes 21 and 45, *supra.*

**48.** *Stone v. Hodges,* Okl., 435 P.2d 165, 167 (1967).